McDONALD v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN. (No. 7182.)*

(Court of Civil Appeals of Texas. Galveston. May 25, 1916. Rehearing Denied June 29, 1916.)

1. APPEAL AND ERROR ☞1066 — HARMLESS ERROR—INSTRUCTIONS.

Where the beneficiary gave a receipt in full of two life policies which recited that she voluntarily made and understood the settlement for one-half their face value, the question whether her relatives, who negotiated the compromise, were her authorized agents, is immaterial, so that an instruction that they were her agents, even if erroneous, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

2. INSURANCE ☞579—LIFE INSURANCE—COMPROMISE—GOOD-FAITH CONTROVERSY.

All that is required to validate a compromise on a life policy is that the beneficiary understand the settlement and that the insurer act in good faith in disputing the claim, and the ground of dispute need not be brought home to the beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1417, 1419; Dec. Dig. ☞579.]

3. APPEAL AND ERROR ☞1066 — HARMLESS ERROR—INSTRUCTIONS.

Where the beneficiary gave a receipt in full of two life policies which recited that she voluntarily made and understood the settlement for one-half their face value, the question whether the controversy between the insurer and her relatives as to the cause of insured's death was to be considered as if between herself and the insurer was immaterial, and an instruction that it should be so considered was without prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Mrs. Minnie E. McDonald against the Ætna Life Insurance Company of Hartford, Conn. Judgment for defendant, and plaintiff appeals. Affirmed.

King & Hughes, of Galveston, Harry Tom King, of Abilene, and H. C. Hughes and R. L.

Pillow, Jr., both of Galveston, for appellant. Baker, Botts, Parker & Garwood and Jno. C. Townes, Jr., all of Houston, and W. T. Armstrong, of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellant against the appellee to recover upon two insurance policies for the sum of $8,750 each issued by appellee, and by which it insured appellee's deceased husband, John C. McDonald, against death by accidental means in the sums named in said policies.

The plaintiff's original petition set up the policies and set up the death of the insured on the 8th day of December, 1914, by accidental means, to wit, from gas asphyxiation. Said petition gave credit for one-half of the principal sum paid to the plaintiff, and asked judgment for the balance, $8,750, together with 12 per cent. penalties and an attorney's fee of $2,500.

Defendant in its first amended original answer admitted the issuance of the policies and the death of the insured, but denied the cause of the death, alleging that same was not due to an accident, but to natural causes. It also set up the insurer's right to an autopsy, the failure of the plaintiff to permit an autopsy, and the forfeiture of the policies thereby, and further alleged, among other defenses, that they had paid $8,750 in full and final settlement of all claims due under the policies as a compromise thereof, and that there was nothing due from the defendant to the plaintiff on account of said settlement and adjustment, attacking a release to the answer which recited full settlement of the two policies for the sum of $8,750, said release being dated January 4, 1915, and in that connection set up that the negotiations leading up to the settlement were carried on by P. B. Eyler, representing the defendant, and J. W. Carson and Capt. Robertson, representing the plaintiff; that said parties were agents of the plaintiff authorized to represent her in said negotiations; that the agent of the defendant, after investigating the facts surrounding the death of Mr. McDonald, reached the conviction that he did not die from accidental causes, and urged said defense prior to the making of said settlement in good faith believing it to be a substantial defense or a doubtful question; that a dispute or controversy as to the liability of the defendant company was raised; and that said controversy was bona fide, and was maintained in good faith upon the part of said Eyler and the said defendant. They also set up the intemperance of the deceased.

Plaintiff by first supplemental petition set up the facts in regard to the autopsy, which, however, was not made an issue in the trial of the case. She denied that there was any good faith in the contention that her husband had not died from accidental means

or that said defense was bona fide or set up in good faith. She further denied that Robertson and Carson were her agents, and stated that they were not directed or appointed by her to make any settlement with the insurance company; that she was never at any time informed as to what took place between Robertson, Carson, and Eyler, and could not and did not ratify the transaction between them and Eyler. She admitted that she signed a release, but set up that the amount due her was a liquidated demand, and that the insurance company was at the time of said settlement and at all times due her $17,500, and that the $8,750 was simply a payment upon same, and that there was no consideration for said release.

By first supplemental answer defendant denied the matters and things set up in the foregoing pleadings of the plaintiff, and especially denied that the plaintiff was without knowledge of the negotiations between Eyler, representing the defendant, and Mr. Robertson and Mr. Carson.

The cause was submitted to a jury in the court below upon the following special issues:

"(1) Did John C. McDonald die from gas asphyxiation? Answer 'Yes' or 'No.'

"If you answer the foregoing interrogatory 'No,' you need not answer further.

"(2) Was there any good-faith controversy between the parties as to the cause of his death at the time of settlement? Answer 'Yes' or 'No.'

"(3) At the time the settlement was made, or during the negotiations with Mr. Robertson or Mr. Carson leading up to same, was the contention of Mr. Eyler to the effect that Mr. McDonald's death was not due to gas asphyxiation made by the said Eyler in good faith in the belief that his contention was well founded or in the belief that it presented a doubtful question? Answer 'Yes' or 'No.'

"If you answer either of the second or third interrogatories 'Yes,' you need answer no further."

The jury answered "Yes" to first and second questions, and upon the return of such verdict judgment was rendered in favor of the defendant.

The following facts were shown by the evidence:

On the night of December 8, 1914 (while the policies in question were in force and effect), John C. McDonald died suddenly, in the bathroom of his home, in Galveston, Tex. There was no one present when Mr. McDonald was stricken, and he was in an unconscious and dying condition when discovered by members of the household.

J. A. Robertson, a relative of Mrs. Minnie E. McDonald, the widow, prepared proofs of death for her signature, and attended to transmitting them to the company. The proofs of death showed the contention of Mrs. McDonald to be that her husband had been accidently asphyxiated by gas. Four or five days after the proofs of death were transmitted to the insurance company, its chief adjuster, Mr. P. E. Eyler, went to Galveston for the purpose of investigating the claims and ascertaining, if possible, the cause of death. Upon Mr. Eyler's arrival in Galveston he was taken to the home of deceased by the said J. A. Robertson, where, after meeting Mrs. McDonald, he, in the presence of Mr. Robertson and one of the ladies of the household, made tests of the gas heater. Mr. Eyler interviewed the doctors that had been called to see Mr. McDonald on the occasion of his death, and after completing his investigation informed the said Mr. Robertson that he did not believe that the death of the deceased was due to gas asphyxiation or other accidental cause, and that his investigation had lead him to believe that death was probably due to apoplexy or other disease.

Mr. Robertson, assisted by Mr. J. W. Carson, son-in-law of the widow, and administrator of the estate of the deceased, endeavored to secure from Mr. Eyler payment of the policies in full. Mr. Eyler refused to pay the policies for the alleged reason that he did not believe the death was due to violent, external, and accidental means. Mr. Eyler further contended, in discussing the claims with Mr. Robertson and Mr. Carson, that the insurance company was entitled to an autopsy upon the body of the deceased, and that it was his purpose to demand that same be held; there being a provision in the policies providing therefor.

Mr. Robertson began negotiations for a settlement with Mr. Eyler, and the matter of compromise was discussed a number of times between Mr. Eyler, Mr. Robertson, and Mr. Carson, with the result that Mr. Eyler finally agreed to pay $8,750 in settlement of the controversy. Mr. Robertson and Mr. Carson then took the matter up with the widow, and the claims were settled on the basis mentioned, under date of January 4, 1915. Before the payment to appellant of the $8,750 she executed the following release:

"Galveston, Tex., January 4, 1915.

"Received from the Ætna Life Insurance Company, Hartford, Conn., the sum of eight thousand seven hundred and fifty dollars ($8,-750.00), which I hereby and now do accept in full compromise settlement and discharge of all claims I now have or may hereafter have, under accident policies Nos. B. 246360 and 785885, issued by said company on the life of my deceased husband, John C. McDonald, who died December 8, 1914, at his home in the city of Galveston, Tex.

"I clearly understand that by the acceptance of this settlement I am relinquishing to said company one-half (½) of my claim as made and presented for payment under the foregoing numbered policies.

"I have not been approached by any representative of the Ætna Life Insurance Company concerning this settlement, having relied upon my son-in-law, Mr. J. W. Carson, who has negotiated this settlement with your adjuster, P. B. Eyler, for me.

"I hereby surrender the above numbered policies to said company for cancellation.

"Minnie E. McDonald.

"Witnesses:

"J. W. Carson.

"J. A. Robertson."

The amount agreed upon by way of compromise was promptly paid to appellant and was accepted and retained by her, and has never been tendered back to the insurance company. Neither Mr. Eyler nor any other agent of the insurance company discussed the matter of compromise with the widow personally, nor was any one representing the insurance company present at the time the release was signed; all of the negotiations being had between Mr. Eyler, for the insurance company, and Mr. Robertson and Mr. Carson, acting in behalf of the widow. There is ample evidence to sustain each of the findings of the jury above set out.

[1] The first assignment of error presented by appellant complains of the following paragraph of the charge given the jury:

"You are instructed that in so far as Messrs. Carson and Robertson acted in Mrs. McDonald's behalf in negotiating the settlement with Mr. Eyler, the company's agent, they were authorized by Mrs. McDonald to do so. And whatever statements Mr. Eyler as such agent made to them having relation to his refusal to pay the full amount of the policies are notice to her the same as if made to her personally."

The ground of the complaint is that the evidence was conflicting upon the question of whether Robertson and Carson were the agents of appellant in negotiating the settlement with appellee, and it was therefore error for the court to instruct the jury that they were such agents. Both Robertson and Carson testified that they were not the authorized agents of appellant in the negotiations carried on by them in effecting the settlement of appellant's claim, but were volunteers acting in the matter because of their friendly interest in appellant's welfare, and that in discussing the matter with appellee's agent they told him they were not authorized to make any settlement. This evidence is uncontradicted, but the uncontradicted evidence further shows that when the offer of $8,750 was made by appellee to Robertson and Carson they reported the offer to appellant, and she agreed to accept it, and they then returned to appellee's agent and accepted the offer for appellant, and brought her the receipt above set out, which she signed, and upon the execution of which the money was paid to her. Plaintiff testified as to the final settlement as follows:

"When Mr. Robertson and Mr. Carson came back they told me that they had had up the question of settlement of the accident policy with Mr. Eyler, and that Mr. Eyler had told them to say to me that the company would pay $8,750 on account of the accident policies, and no more; that it was a lawsuit; take nothing or take $8,750. That was the effect of what Capt. Robertson told me. I said in reply that, 'If that is all he will give me, if that is all they will give me, while I am entitled to all of it, if that is all they will give me, I guess I will have to take it.' Capt. Robertson and Mr. Carson then left, and later they brought back settlement papers for me to sign and I received the draft and signed the papers."

Upon these facts we fail to see how the question of whether Robertson and Carson were especially authorized to discuss and negotiate with appellee's agent the settlement of the claim has any bearing upon the validity of the compromise of the claim, or is in any way material in determining appellant's right to recover, and, if it be conceded that the charge is erroneous, the error was clearly immaterial and harmless. The receipt before set out recites that in making the settlement and compromise appellant relied upon her son-in-law, Mr. Carson, who had negotiated the settlement for her. There is no allegation nor proof that the receipt was obtained by fraud, or that appellant did not fully understand all of its recitals, and knew that appellee was paying her $8,750 as a compromise of her claim.

[2] Counsel for appellant insist that, unless the claim of appellee that appellant's husband did not die from accidental means was made to appellant or her authorized agent, there could have been no good-faith controversy between the parties, and the payment of one-half of the amount due on the policies cannot be regarded as a binding compromise or settlement of a disputed claim. We know of no such rule of law. All that was required to make the settlement binding was that appellant should understand that the money was paid to her in compromise of her claim, and that appellee, in claiming that it was not liable on the policies, acted in good faith. The receipt recites that the money paid by appellee was in compromise of appellant's claim. She knew that appellee had refused to pay more than one-half of the amount of the policies, and that unless this amount was accepted she would have to resort to a suit to collect anything on the policies. Now can it be said, under these facts, that appellant did not know when she accepted the $8,750 that appellee was claiming it was not liable on the policies? If notice to appellant of the specific grounds upon which appellee denied liability on the policies was necessary to make the settlement binding, we think the evidence as a whole leads irresistibly to the conclusion that she had such notice, and she does not deny in her testimony that she knew that appellee claimed that her husband died from natural causes.

The testimony as to the cause of the death of appellant's husband was conflicting, and, while the finding of the jury that he died from gas asphyxiation is sustained by the apparent preponderance of the evidence, there is ample evidence to sustain the finding that appellee's claim that he died from natural causes was made in good faith. There is no merit in the assignment, and it must be overruled.

[3] The second assignment complains of the following special charge given at the request of appellee:

"In answering issue No. 2 submitted to you by the court you are instructed that a controversy, if any there was, between the agents of

defendant and Mr. Carson and Capt. Robertson as to the cause of the death of Mr. McDonald, shall be considered by you as a controversy between the parties to this suit."

What we have said in discussing the first assignment disposes of this assignment. The evidence shows conclusively that appellee denied liability on the policies and offered the sum of $8,750 in compromise of the claim, and that appellant, with full knowledge of the fact that the offer was made in compromise of a disputed claim, accepted the amount offered in compromise and released appellee from all further liability. The evidence being amply sufficient to sustain the finding of the jury that appellee's denial of liability was made in good faith, which includes a finding that there was no fraud, misrepresentation, or concealment on the part of appellee in obtaining the compromise and settlement of the claim, the question of whether the controversy between Robertson and Carson and appellee's agent should be considered a controversy between appellant and appellee was wholly immaterial. The charge complained of could not possibly have affected the finding of the jury upon the good faith of appellee in denying liability on the policies, and, as the recitals in the receipt and appellant's own testimony conclusively show that she knew when she accepted the $8,750 that it was paid her in settlement of a disputed claim, the controversy between Robertson and Carson and appellee's agent could not affect the character of the settlement as a voluntary compromise of her claim. We think the undisputed evidence brings the case within the rule announced in the case of Gilliam v. Alford, 69 Tex. 267, 6 S. W. 757.

The third and fourth assignments are without merit and are overruled without discussion.

We are of opinon that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes