### EDGE v. BUSINESS MEN'S ASSUR. CO. OF AMERICA. (No. 7325.) *

Court of Civil Appeals of Texas. Austin.
Feb. 13, 1929.

Rehearing Denied March 6, 1929.

H. L. Livingston and Critz & Woodward, all of Coleman, for appellant.

Solon T. Gilmore, of Kansas City, Mo., Dibrell & Starnes, of Coleman, for appellee.

BLAIR, J. Appellant sued appellee upon an insurance policy which insured the life of Myrtle Elliott, a daughter of appellant, in the sum of $3,000, against loss of life through accidental means. Appellant was named beneficiary, and she alleged that after taking out the policy her said daughter married one Jack Ellis, who shot and killed the insured, Myrtle Elliott Ellis; that Jack Ellis was wholly insane and incapable of exercising volition with respect to shooting and killing the insured, Myrtle Ellis; and that she was therefore injured and killed through accidental means within the meaning of the insurance policy. Appellant further alleged that appellee paid her $1,000 in pursuance of a pretended settlement agreement of its liabilities under the policy, but that said pretended settlement agreement was void because procured by fraud and false representations of one Sprinker, appellee's adjuster, who falsely and fraudulently, and for the purpose of deceiving her, represented that in the event she "filed any suit upon said policy she would be forced and required to file same in the state of Missouri; and that suit could not be filed in Texas"; that she relied upon these misrepresentations, and accepted the $1,000 as a settlement, because she was poor and not financially able to travel to Missouri and prosecute such a suit. Appellee filed a general denial, and specially pleaded that there existed a bona fide dispute as to whether it was liable for any amount under the policy, on the ground that the insured's husband killed her intentionally; and that by reason of the settlement and payment of the $1,000, and the acceptance thereof by appellant upon the advice of her attorney long subsequent to the misrepresentations, she was therefore estopped and barred from asserting any further claim or demand upon the policy.

After hearing the evidence, the court instructed a verdict for appellee, because appellant failed to prove that the fraud alleged induced the settlement agreement, and rendered judgment accordingly; hence this appeal.

Appellant's evidence substantially followed her allegations on the fraud issue. That is, she testified that Sprinker told her that "if she sued the company and it came to trial it would have to be in Missouri."

It is claimed by appellant that when Sprinker made this representation to her, he thereby represented that appellee was not authorized to do business in Texas and had no agent in Texas upon whom process might be served. We do not so interpret the evidence. It merely shows that Sprinker stated that if a

---

suit was filed on the policy, it would have to be filed and heard in Missouri. He gave no reason for the statement; nor did he state any fact upon which he based the statement or conclusion. We doubt whether a mere statement that a suit on a particular written contract must be filed in a particular forum is any more than an expression of an opinion or conclusion, and one party to the contract cannot be misled by the other in that respect unless some trust or fiduciary relation existed. No trust or fiduciary relation existed between appellee's adjuster and appellant. Clearly they were dealing at arm's length in law. A statement by an insurance adjuster made in negotiations looking to a settlement of an insurance policy with reference to his opinion of the law governing or controlling the contract, though false, has been held not sufficient to set aside the settlement made, in absence of a showing that the party to whom the misrepresentations were made sustained a fiduciary relation to the adjuster, or that the relation of the parties was such as to inspire confidence on the part of the insured in the adjuster. No such relationship was shown to exist in this case. Natl. Fire Ins. Co. v. Plummer (Tex. Civ. App.) 228 S. W. 250; McDonald v. Ætna Life Ins. (Tex. Civ. App.) 187 S. W. 1005; Business Men's Assurance Co. v. Bradley (Tex. Civ. App.) 275 S. W. 622; Gilliam v. Alford, 69 Tex. 267, 6 S. W. 757; Franklin Life Ins. Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 203.

■ But should Sprinker's statement be construed to mean that he represented that appellee had no permit to do business in Texas and had no agent upon whom process might be served, still the undisputed evidence shows that she did not rely upon such statement. It is undisputed that appellant refused Sprinker's offer to settle for $750, and told him she would consult a lawyer, which she did. Virgil Hart, now deceased, an attorney, was employed, and he took the matter of settlement up directly with appellee by letter. Appellee replied denying liability on the ground that Myrtle Ellis was intentionally killed by her husband. Appellant's attorney replied that they could establish without difficulty that Jack Ellis was insane at the time he killed the insured, which would "prove our case under the Texas laws, which of course will govern in this case"; and offered to settle for $1,500. In reply appellee offered to settle for $1,000, which offer was accepted. The settlement contract recited the bona fide denial of liability, and was signed by both appellant and her attorney; and appellant, indorsed and cashed the voucher which was made payable to her. These transactions took place several months after appellee's adjuster made the representations complained of, which the adjuster denied. Appellant also testified that she authorized her attorney to settle or compromise her claim; that he did settle it; and further that: "He advised me to accept what the company offered. Acting on the advice of my attorney, Mr. Hart, I did make a settlement of this claim." In other words, it is undisputed that a bona fide denial of any liability under the policy was made by appellee on the ground that the insured was intentionally killed by her husband, and not by accidental means within the meaning of the policy; that it paid appellant $1,000 in settlement of this disputed claim, which she accepted upon the advice of her attorney long subsequent to the time the misrepresentations were made by appellee's adjuster, and executed a full release of all claims she had under the policy; and we therefore conclude that the trial court correctly instructed a verdict in this case. This conclusion is based upon the rule that where a party claims to have been defrauded into making a contract by misrepresentations of the agent of the other party thereto, and it is shown that the party asserting fraud did not in fact rely on the fraud, but that before making the contract made a personal investigation or an investigation through an agent or attorney, and relied upon the knowledge thus acquired and upon the advice of the agent or attorney in making the contract, such party will not be heard to assert the fraud as inducing the contract. Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Hart-Parr Co. v. Krizan & Maler (Tex. Civ. App.) 212 S. W. 835; James v. Doss (Tex. Civ. App.) 184 S. W. 623; Zavala Land Co. v. Tolbert (Tex. Civ. App.) 165 S. W. 28; Newman v. Lyman (Tex. Civ. App.) 165 S. W. 136; Shores v. Hutchinson, 69 Wash. 329, 125 P. 142; Burke v. Berry, 152 Iowa, 110, 131 N. W. 753; Rhodes v. Owens, 101 Wash. 324, 172 P. 241; Palmer v. Shields, 71 Wash. 463, 128 P. 1051.

■ In this connection appellant contends, however, that she did not tell her attorney that Sprinker made the misrepresentations to her. This is not material, since the undisputed evidence shows that the attorney did not act upon such misrepresentations, but settled the disputed claim for an amount he thought proper, and advised appellant to take that amount, which she did. She is therefore bound by the acts of her attorney which she unquestionably authorized.

The judgment will be affirmed in all things.
Affirmed.