No. 2310.

SALLIE F. GILLIAM *v.* E. B. & K. B. ALFORD.

1. VOLUNTARY SETTLEMENTS—COMPROMISE.—If a doubt exists between parties as to their rights, and both have the same knowledge, or means of knowledge, relating to facts involving such rights, and there is no fraud, misrepresentation or concealment, a compromise voluntarily made between them will be enforced, although the final issue may be different to that anticipated, and although the disposition made by the parties in their agreement may not be such as the court would have decreed had the controversy been brought before it for decision. See opinion for a settlement between a surviving wife and the purchaser of an interest in a benefit certificate issued by the American Legion of Honor, illustrating this rule.

2. MISTAKE OF LAW.—Money paid under a mistake of law with respect to a liability to make payment, but with full knowledge of all the facts on which the claim for payment is based, and on which the right to resist payment depends, can not ordinarily be recovered back.

APPEAL from Rusk. Tried below before the Hon. J. G. Hazelwood.

*John R. Arnold* and *J. H. Wood,* for appellant: The transfer of Gilliam's certificate to appellees was utterly void *ab initio.* Price v. Knights of Honor et al., 4 Southwestern Reporter, 63; Levy v. Taylor et al., 1 Southwestern Reporter, 900; Chew v. Splawn et al., 60 Texas, 532; 25 Texas, 587; Seeligson v. Lewis & Williams, 65 Texas, 215; 15 Wallace, 244; 26 American Reports, 761.

Contracts inhibited by public policy or law can not be ratified. Sheldon v. Marshall, 16 Texas, 344; Seeligson v. Lewis & Williams, 65 Texas, 215; Davis v. Sittig, 65 Texas, 497; Story on Constitution, section 445; 19 American Decisions, 71; 31 Ameri-

can Reports, 547; 30 American Reports, 198; 37 American Reports, 396; Idem, 398, note; 19 Vermont, 369; Brook v. Hook, 6 L. R. Exch., 89; 40 L. J. Exch., 50; 24 L. T. N. S., 34; 19 Western Reporter, 508.

What the law will not permit to be done directly can not be done by indirect means, however numerous the links in the chain. Price v. Knights of Honor et al., 4 Southwestern Reporter, 633; May on Insurance, section 3 and notes.

When money has been paid by one under a mistake of his rights and his duty, without legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, regardless of good or bad faith, whether the mistake be one of law or of fact. George et al. v. Taylor, 55 Texas, 97; Varner v. Carson et al., 59 Texas, 303; Harper v. Harper, 3 Southwestern Reporter, 5; 7 Wait's Actions and Defenses, page 69, section 6; Kerr on Frauds and Mistakes, 277, and note; Idem, 398, 399, and note; Idem, 400, 401, 430, 431; Northrop v. Garner, 19 Connecticut, 548; 5 American Decisions, 701.

A consideration that will not support an original contract can not support a ratification of same. Seeligson v. Lewis & Williams, 65 Texas, 215; 4 Southwestern Reporter, 633; Story on Constitution, section 445.

No consideration will support a ratification of a contract inhibited by law or by public policy. Wooters v. Smith, 56 Texas, 208, and authorities cited; 19 American Decisions, 71; Under v. Boas, 13 Pennsylvania State, 601; Harmon v. Boyce, 2 Treadwell (S. C.) Constitution, 200; Homan v. Biggs, 36 Massachusetts, 690; 11 American Reports, 15; Kerr on Frauds and Mistakes, 221, 222.

If appellant gave up something for nothing she is entitled to recover it back regardless of the good or bad faith of appellees. Brown et al. v. Texas Cactus Hedge Company, 64 Texas, 396; Ramey v. Allison, 64 Texas, 697; Moreland v. Atchison, 19 Texas, 303; Henderson v. Railroad Company, 17 Texas, 576; Mitchell v. Zimmerman, 4 Texas, 75; Loper et al. v. Robinson, 54 Texas, 510; 1 Wait's Actions and Defenses, section 4, page 95; Story on Constitution, section 432; Kerr on Frauds and Mistakes, 53–55, 61 note, 67–69, 324, 325, 415, 416, note; Fowler v. Butterly, 34 American Reports, 507.

No brief on file for appellee.

STAYTON, ASSOCIATE JUSTICE. Miniard Gilliam, who was the

first husband of the appellant, procured two benefit certificates from the "American Legion of Honor," each for three thousand dollars. One of these was payable to his wife on his death, and the other was payable to him or to him and children on the death of his wife. He paid the dues and assessments for some time, but then became unable to pay them, and he then made application to the order to reduce each of the certificates to one thousand dollars. He was advised by the secretary of the order not to have the certificates reduced, but to get some person to pay the dues and assessments on both in consideration of a transfer of an interest in each certificate. Gilliam sought such an arrangement with others, but failed, and then made a written agreement with the appellees, by which it was agreed that they should pay the dues and assessments on both policies as they accrued, and that, for this, they should receive the sum of two thousand dollars under each certificate when they became payable. From the time that agreement was made until the death of Miniard Gilliam, the appellees paid all dues and assessments.

After the agreement was made, Gilliam lived about fifteen months. On his death the agreement, in so far as it affected the benefit certificate payable on the death of Mrs. Gilliam, was canceled, she repaying, or agreeing to repay, such sums as the appellees had paid thereon. After the death of Gilliam, which occurred on April 4, 1886, the appellees asserted a claim, under the agreement made with him, to two thousand dollars of the money that then fell due.

The evidence shows very clearly that Mrs. Gilliam had full knowledge, during the life time of her husband, of the agreement which he had made with the appellees, and of all facts which affected the rights of the parties to the money due on the certificate. With such knowledge, Mrs. Gilliam, on May 29, 1886, executed and acknowledged before a notary public the following instrument: "Know all men by these presents, that I, Mrs. Sallie Gilliam, wife of Miniard Gilliam, deceased, hereby agree that the contract made and entered into between my husband, Miniard Gilliam, and Messrs. Alford Brothers, of Overton, Rusk county, Texas, remain in full force and effect, and that I consent that the agreement in the matter of his assigning two thousand dollars of his policy in the A. L. of H. shall be carried out in full and to the letter." Subsequently to this, a draft was sent by the order to Mrs. Gilliam, payable to herself or order, for the entire sum by the terms of the certificate due on the

death of her husband. This was cashed by her, and out of the proceeds she received fourteen hundred dollars and gave to the appellees a draft on the bank which had agreed to cash her draft, for the residue of the three thousand dollars. The additional four hundred dollars was retained by Mrs. Gilliam with the consent of the appellees, on her statement to them that she sorely needed that sum in addition to the one thousand dollars provided for her by the agreement of her husband, as well as that of herself, made after his death.

Thus the matter was settled between the parties, and there is no conflict in the evidence as to the fact that Mrs. Gilliam was in full possession of any fact necessary to a proper understanding of her rights at the time she executed the paper copied, as well as at the time she gave the appellees a draft for one thousand six hundred dollars, the balance in bank. There is nothing in the record tending to show that the appellees made any fraudulent representation to her as to the effect of any act she did.

The only thing as to which there was a conflict at all material in the evidence, was that Mrs. Gilliam stated that the appellees agreed to give her something in addition to the fourteen hundred dollars, to enable her to build a house. This was denied by the appellees, and the court instructed the jury that if they believed from the evidence that this matter was as stated by Mrs. Gilliam, then they would find in her favor for the sum for which she sues. The finding of the jury was for the defendants. Under the conflict of evidence, this finding is conclusive on this issue, and as the charge of the court as to this was as favorable to the appellant as she could ossibly ask, this matter need not be further considered.

This action was brought to recover the sixteen hundred dollars paid by Mrs. Gilliam to the appellees, and damages for its detention. The petition is full of charges of fraud, deceit, misrepresentation and oppression, but for the sake of humanity, we are glad to be able to say that the evidence of the appellant herself relieves the appellees from those charges, except as to the conflict to which we have referred. The court below, in effect, instructed the jury that the contract between the husband of Mrs. Gilliam and the appellees, under the rules of the order to which the former belonged, conferred no right whatever upon the latter. As this charge was in favor of the appellant, it is unnecessary to inquire whether it was entirely correct. It certainly went as far as she could ask.

The charge of the court made the right of the appellees to depend solely on the acts of Mrs. Gilliam subsequent to the death of her husband. Mrs. Gilliam was not ignorant of any fact on, which her right to the entire sum promised in the benefit certificate depended. Of these she was fully advised. Her letters show that she had been advised that it was her right to have the entire sum, less money expended by appellees to keep the certificate in force; and this before she executed the instrument of date May 29, 1886. That the appellees believed they were entitled to enforce the contract made with Miniard Gilliam there can be no doubt, looking to the record before us, and however much they may have been mistaken in this, does not affect the fact that they were in good faith asserting a claim. Mrs. Gilliam must have thought her right to more than one thousand dollars doubtful, or have been willing to concede that this was the extent of her legal right, for throughout her testimony she seems to base her claim for more upon the generosity of the appellees. Under this state of facts it becomes necessary to consider the effect of the instrument signed by her on May 29, 1886, for it must be held that she voluntarily put an end to all controversy by a voluntary settlement and payment to appellees of the sum which she now seeks to recover. The rule in such cases is, that "voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision." (Pomeroy's Equity, 850.)

There is another rule enforced, both at law and in equity, which would defeat a recovery in this case on the ground that the money was paid under a mistake of law, for it is well settled that money paid under a mistake of law with respect to liability to make payment, but with full knowledge of all the facts on which the claim for payment is based, and on which the right to resist it depends, can not be recovered. (Pomeroy's Equity, 851; Bispham's Equity, 189; Galveston County v. Graham, 49 Texas, 303.)

If there be, as has been suggested, qualifications to this rule, the facts of this case do not bring it within them, for Mrs. Gilliam had knowledge of every fact on which the rights of herself and the appellees depended.

The assignments of error not disposed of in what has been already said relate to the admission and exclusion of evidence, and to the giving and refusing of instructions. The petition was full of averments that the contract between Miniard Gilliam and the appellees, as well as all transactions between them and the appellant, were brought about by fraud, misrepresentation, concealment and deceit, and the appellees were permitted to prove the facts attending the entire transactions, and in this there was no error, as the evidence tended to show that the entire transactions were open and free from misrepresentation or other invalidating influence. The court, as before said, informed the jury that the contract between the husband and the appellees conferred on the latter no right whatever, and the fact that this contract, together with facts attending its execution, were admitted in evidence, could not have prejudiced the appellant, but was proper to enable the jury fully to understand the known facts under which she acted in paying the money which she now seeks to recover.

The appellant was permitted to prove that she was very poor and had a large family dependent upon her, and that she paid for the house in which she was living at the time of the death of her husband with a part of the money which she received; but she was not permitted to state that this house was about to be sold under a vendor's lien. It is urged that this was error. We do not see that this evidence was pertinent to any issue in the case. The poverty of the appellant was a fact which certainly ought to have prompted the most generous action on the part of the appellees; and whether they exercised it, under the facts of this case, is a matter which they must answer for before the tribunal of their own consciences, but it can not affect the legal rights of the parties.

The charges given presented the law of the case as favorably for the appellant as the facts would justify; and those refused, which were correct and applicable to the case made, were substantially embraced in the charges given. The appellant, on the death of her husband, doubtless had rights under the certificate in her favor which she could have enforced, through which she might have realized a greater sum than she received; but by her

own voluntary acts she has surrendered all right to recover from the appellees the sum which she paid to them.

Courts have power to enforce rights, but they have no power, where rights have been voluntarily surrendered by acts binding in law, to reinstate and enforce them simply because a settlement has been made in which one party did not receive as much as, under the law, she would have been entitled to.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

**Opinion** adopted November 23, 1887.