**CONTINENTAL CASUALTY CO. v. SIMPSON. (No. 10168.)**

Court of Civil Appeals of Texas. Dallas. April 14, 1928.

Rehearing Denied May 26, 1928.

1. **Judgment ⬅214—Where case was submitted on special issues, no judgment could be entered until there was judicial pronouncement of law as applied to findings.**

Where case was submitted on special issues, verdict only reflects its findings on disputed questions of fact embraced on court's submission, and no judgment could be entered until there was judicial pronouncement of law as applied to such findings of fact.

2. **New trial ⬅116(3)—Where judgment based on special findings by jury was entered May 30th as of March 14th, date of trial, motion for new trial filed May 28th was in time.**

Where case went to trial on March 14, 1927, and was submitted on special issues and plaintiff's motion for judgment was granted by court on May 30, 1927, but was entered as of March 14, 1927, and defendant's motion to set aside verdict filed March 21st was overruled May 28th, defendant's motion for new trial filed May 28, 1927, was filed within statutory time.

3. **Compromise and settlement ⬅6(2)—Where doubt exists between parties having same knowledge of rights, compromise voluntarily made will be enforced.**

Where doubt exists between parties as to their rights, and both have same knowledge or means of such knowledge relating to facts involving such rights, and there was no fraud, misrepresentation, or concealment, compromise voluntarily made between them will be enforced, though final issue may be different from that anticipated, though disposition made was not such as court would have decreed.

4. **Appeal and error ⬅927(7)—In considering whether plaintiff made prima facie case of fraud inducing execution of compromise settlement, plaintiff's evidence must be accepted as true.**

In considering whether plaintiff made prima facie case of fraud and misrepresentation inducing his execution of compromise settlement of claim against insurance company under accident policy, plaintiff's evidence must be accepted as true.

5. **Insurance ⬅668(14)—Evidence held not to present issue of fraud inducing compromise settlement of claim under accident policy.**

In action on accident insurance policy, evidence *held* not to show that insured represented by attorney, was induced to enter into compromise settlement with insurance company by means of fraud and misrepresentation by insurance company's agent to effect that he could not recover anything under policy, and court erred in refusing peremptory instruction for defendant.

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Action by Alexander B. Simpson against the Continental Casualty Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellant.

L. R. Stroud, of Dallas, for appellee.

JONES, C. J. In a suit by A. B. Simpson, appellee, in a district court of Dallas county, on an accident insurance policy issued by appellant, Continental Casualty Company, appellee was awarded judgment and appellant has duly perfected an appeal to this court. The suit is based on the following facts:

Appellee had been a passenger conductor with the Gulf, Colorado & Santa Fé Railway Company for many years, and appellant issued to him in 1901 the accident policy forming the basis of this suit. The policy was for the principal sum of $5,000, and provided for the payment of 50 per cent. of this principal sum in the case of the loss of a limb. It provided for an accumulation during the years it was in existence, and, at the time of the injury to appellee, the principal sum with the accumulation amounted to $7,500 and for the severance of a limb the sum payable was $3,750. The policy indemnified appellee for accidental injuries "through external, violent, purely accidental causes." Clause 8 of the policy provides that if appellee shall sustain the loss of life, limb, sight, or time from vertigo, then the maximum amount payable shall

be one-eighth the amount which would be payable under this policy for like injuries arising from purely external, violent, and accidental causes.

On May 26, 1922, appellee was in charge as conductor of a passenger train of the G., C. & S. F. Ry. Co. that was being operated from the city of Dallas to the city of Paris. This train stopped at the depot of Wolfe City at 9:40 p. m. Appellee, while on the depot platform, and just after he had signaled the departure of the train, suddenly fell with the result that a wheel passed over his left hand and so badly crushed it that amputation above the wrist was necessary. Appellee at once received emergency treatment from local physicians, was placed on a train, accompanied by a local physician, and carried to a hospital in the city of Paris where the amputation by another physician was had soon after his arrival at the hospital. He remained in the Paris hospital for about ten days, and was removed to the Santa Fé Hospital at Temple, where he remained several weeks and occasionally returned for treatment during the year following the accident.

Appellee made statements to several parties as to how he came to fall on the occasion of his accident. To Dr. Hooks, who amputated the arm, he said:

"I had just given a starting signal, and was in the act of getting on the train, when I was seized with an attack of vertigo, lost my balance, and fell from my left and across the rail; wheel passed over and crushed left hand and lower end of left arm."

To Dr. Gober of the Temple Hospital he stated that he was susceptible to an attack of vertigo, and that on the day of the accident he noticed that he was dizzy and that things seemed to dance before his eyes, and after a few seconds would disappear. To a Mr. Lawler, who investigated the accident for the Santa Fé Railway Company, he made the sworn statement that:

"I just fainted, and fell on my left shoulder. I don't remember the wheel going over my hand."

And again he stated:

"I fainted. There is nothing else in the world to account for it. That morning, before I left Dallas, there was a cloud before my eyes, and I thought I would work it off. I didn't think there was anything particularly wrong with me. I am not in the habit of fainting. * * *"

In the claim he made in June, in the Temple Hospital, to appellant, he gave fainting as the cause of his falling under the train. Dr. Gober, who made the surgeon's report in behalf of appellee's claim, also gave fainting as the cause of appellee's falling under the train.

At the trial of the case, appellee's testimony was to the effect that there was nothing the matter with him at the time of the accident, and that he was caused to fall by his foot slipping on some substance on the platform; that he did not faint, and never lost consciousness. Two eyewitnesses to the accident, who saw him fall and who rescued him from under the train after his hand had been crushed, stated that he seemed to be conscious at said time and exclaimed, "My God, my hand is cut off!" The depot agent at said place also witnessed the accident, and stated that appellee's lantern dropped from his hand, he staggered, and suddenly fell. The physicians at Wolfe City, who came at once in response to calls, each testified that he was conscious when they got to him. Appellee testified that he did not remember the various statements he had made in reference to fainting and suffering an attack of vertigo, and there was evidence from him and his wife to the effect that, because of his suffering and the effect of medicine administered during a long time following the accident, he was feeble, both in body and in mind.

Appellee wrote several letters to the company and its agent, George P. Donaldson, requesting a settlement for his injury under his policy, and in July Donaldson visited him in Fort Worth and, according to appellee and his wife, told them that a settlement would have to be had under the health provision of his policy, and that the company did not owe him anything, but would pay him $400 which they refused. Donaldson's version of this interview was that he told them that, under provision 8 of the policy, he could only recover $468, or one-eighth of the face value of the policy. The result of this interview was that appellee refused the offer and employed an attorney, the late Hon. D. W. O'Dell, who afterwards took the matter up with Donaldson, representing appellant. O'Dell had a personal interview with Donaldson, who made the same claim in reference to the policy that he had made with appellee, and the result of this interview was that O'Dell took further time to consider what he would advise his client. After some correspondence, an interview was arranged between Donaldson, representing the company, and appellee and his attorney, in Fort Worth, in the office of the local attorney for appellant. As a result of this interview that lasted for some time and consisted of considerable discussion as to appellee's rights under his policy, a settlement was agreed upon, under the terms of which Donaldson, acting for appellant, gave to appellee and his attorney a check in the sum of $1,750 in full settlement of the claim, and appellee's attorney promised to send in the policy at once, which was at that time in his office. A full and complete release was executed by appellee and his attorney, the effect of which, if valid, would be a complete bar to this suit. This settlement was on the 17th day of March, 1923.

The policy was not returned to appellant or its said agent, and on the 21st day of May, 1923, this suit was filed, the policy then being in the possession of appellee.

By amended petition, appellee undertook to avoid the legal effect of the release he had executed by alleging in effect that it was secured by fraud and misrepresentation. The specific acts of fraud are based on allegations that false representation was made to him by Donaldson in that it was represented to him that he could not recover anything under his policy, and that it would be held in court for years; that appellant knew that he was in a deplorable condition financially, in ill health, and feeble in mind; that he believed the representations, and, because of his condition, was led by such representations to accept the proffered amount in settlement and to execute the release in question.

Appellant pleaded the settlement and release in bar of recovery, and denied all allegations of fraud or misrepresentation.

The case was tried to a jury, submitted on special issues, in which the jury found (a) that appellant did commit the acts of alleged fraud and misrepresentation upon plaintiff to induce him to make the settlement of his claim; (b) that appellee relied upon the false statements made to him by appellant's said agent in making the settlement and executing the release; (c) the accident in question was not caused by an attack of vertigo; (d) the accident was caused by appellee's slipping on the platform of the Santa Fé Railroad at Wolfe City.

Appellant, having seasonably requested a peremptory instruction that was refused and its objection to the submission of the issues to the jury, on the ground of want of evidence, overruled when the verdict was returned, filed a motion to set the several findings aside for the reason that they were unsupported by any substantial evidence in the case. Appellee filed a motion for judgment. Appellant's motion was overruled. Appellee's motion was granted, and judgment was entered in favor of appellee for the balance of $2,000 adjudged to be due appellee under the said policy of insurance. Appellant duly excepted to these adverse rulings of the court, and has presented the questions raised under proper assignments of error.

[1, 2] A preliminary question has arisen on motion of appellee, alleging that the motion for new trial and bills of exception cannot be considered by this court because not filed within the statutory time. This contention arises from the following facts appearing in the record. The case went to trial on March 14, 1927. Appellee's motion for judgment was granted by the court on May 30, 1927, but, for some unexplained reason, is entered as of "March 14, 1927." The charge of the court was filed March 15, 1927, and the record does not show on what date the verdict was returned. Appellant's motion to set aside the verdict of the jury, filed March 21, 1927, was overruled May 28, 1927, but the entry not made in the minutes until May 30, 1927. Appellant's motion for a new trial was filed May 28, 1927, and overruled on the same day. The contention is made that the controlling date is that of March 14, 1928, because the judgment was entered "as of that date." In this we think appellee is in error. The case was submitted on special issues and, in such a case, the verdict of the jury only reflects its findings on the disputed issues of fact embraced in the court's submission. No judgment could be entered until there was a judicial pronouncement of the law as applied to these findings of fact. There was no such pronouncement in this case, at least prior to May 28, 1927, when the trial court overruled appellant's motion to set aside the findings of the jury and thereby indicated that such findings would be made the basis for a judgment. It therefore appears that appellant's motion for new trial and bills of exception were filed within the statutory time.

Appellant has presented several assignments of error arising under the record in this case, but, under our view of the case, it is necessary to consider only the assignment on the refusal of the court to give the requested peremptory instruction. As shown by the statement of this case, a compromise for the sum of $1,750 was agreed to by the parties.

[3-5] The undisputed evidence shows that there was a controversy between appellee, the insured, and appellant, the insurer, as to whether, under the circumstances of the injury, appellee was entitled to $3,750, the maximum face value of the policy, or only to $468.75, one-eighth of this maximum sum. Under the terms of the contract of insurance, if appellee was seized with an attack of vertigo that caused him to fall and receive the injury, he was only entitled to the smaller sum; if he was not seized with such attack and his fall was caused by stumbling on the platform, he was entitled to recover the larger amount. Appellee's statements in the possession of appellant tended strongly to indicate that the cause of his falling was an attack of vertigo. The record is undisputed that, prior to this lawsuit, the theory of stumbling and falling on the platform had never been given by appellee. It may be presumed that appellee's attorney knew that his testimony, in reference to how he came to fall, would be as given in the trial of this case, but it must have presented to him a serious question as to whether a jury would find this material fact to be in line with the previous statements of appellee, or in line with the statement to be given on the witness stand.

With full knowledge of all the circumstances of the manner in which he received his injury, and with full knowledge of his contract of insurance, for the policy was in the

possession of his attorney, and with the benefit of advice of an attorney of his own choosing, the compromise agreement was voluntarily made, and an absolute release voluntarily executed. The law controlling such a case is well stated in Gilliam v. Alford, 69 Tex. 267, 6 S. W. 757, in which it is declared that:

: "If a doubt exists between parties as to their rights, and both have the same knowledge, or means of knowledge, relating to facts involving such rights, and there is no fraud, misrepresentation or concealment, a compromise voluntarily made between them will be enforced, though the final issue may be different from that anticipated,.and though the disposition made by the parties in their agreement was not such as the court would have decreed had the controversy been brought before it."

In possession of the statements made by appellee, appellant could honestly contend that only the sum of $468.75 was recoverable under the policy. Under such facts, both appellee and his counsel must necessarily have a serious doubt in reference to appellee's right of recovery for any larger sum. Was there any fraud, misrepresentation, or concealment on the part of Donaldson, appellant's agent conducting all the negotiations, with reference to appellee's claim? No concealment of any material fact appears in the case, and hence fraud cannot be based on that charge. The only misrepresentation testified to by appellee, or any of his witnesses, is that Donaldson claimed in July, 1922, before appellee had employed an attorney, that no recovery could be had under the policy. While this evidence is in dispute, yet in considering whether a prima facie case of fraud and misrepresentation is made by appellee's evidence, it must be accepted as true. This is the only the expressing of an opinion by the agent of his construction of the terms of the policy, of which appellee had the same means of knowledge as appellant. But if this be passed over, the fact is undisputed that appellee did not rely on this expressed opinion of the agent, but rejected it as incorrect, employed an attorney, and turned the matter over to him. On the occasion of the settlement, it appears that the attorney for appellee had reduced his demands from $3,000 to $2,000, and that appellant had increased its offer from one-eighth of the face of the policy to $1,500, and that after some discussion the difference between them was composed and appellee agreed to the settlement. This evidence is undisputed. Appellee's complaint on the witness stand seemed to be almost entirely based on the bad judgment shown by his attorney, and not on anything said or done by appellant's agent. Under this record we are impelled to the conclusion that there is no evidence that tends to impeach the validity of the compromise agreement, and that the court

erred in refusing the peremptory instruction. Davis v. Moye (Tex. Civ. App.) 155 S W. 962; Gilliam v. Alford, supra; 26 Corpus Juris, 1207.

In accordance with the above view it is our opinion that this case must be reversed and here rendered for appellant.

Reversed and rendered for appellant.