**RUST v. RUST.**

No. 13240.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 11, 1935.

Rehearing Denied Nov. 1, 1935.

Second Motion for Rehearing Denied
Dec. 6, 1935.

Marvin H. Brown, Jr., of Fort Worth, for plaintiff in error.

Clarence E. Farmer, of Fort Worth, for defendant in error.

BROWN, Justice.

For convenience, the parties in this case will be designated as appellant and appellee.

Appellant brought suit against appellee in the district court of Tarrant county upon two promissory notes, each dated May 1, 1932, payable on demand to the order of appellant, one being for the principal sum of $3,203.30, and the other for the principal sum of $1,407.59, each bearing interest from date at the rate of 10 per cent. per annum and each providing for the usual 10 per cent. attorneys' fees.

Appellee answered by a general demurrer, a general denial, and two separate pleas of want of consideration, the follow-ing language being used in the plea relating to the larger note:

"That the plaintiff prepared the said note and notes himself and by the use of undue influence upon the defendant, induced the defendant to sign it and them when the defendant did not know what he was being asked to sign.

"Defendant further shows to the court that the plaintiff by a series of fraudulent and designing means took advantage of his father's age, hearing, eyesight, and understanding, and did by misrepresentation induce the defendant to sign said note and those preceding it, of which it is claimed to be a renewal. And defendant solemnly swears that no consideration was given for the beginning note of the series, or any one of them."

And the following language was used in relation to the plea concerning the smaller note: "That the plaintiff prepared the said note and notes himself and induced the defendant to sign it and them at a time when the defendant was not aware of the purport of what he was being asked to sign. That said note is the last of a series of said-to-be-renewed notes, the first of which was said to have been given in May 1, 1926, and for which first note in the sum of $919.34 or for any one of them no consideration was given, but the plaintiff did by fraudulent and designing means take advantage of the defendant's hearing, eyesight, age, and understanding, and did by undue influence and misrepresentations induce the defendant to sign said note and those preceding it, of which it is claimed to be a renewal."

Following these particular allegations and pleas, appellee indulged in many allegations which are, in our opinion, purposeless and of no value. He begins paragraph five of his answer with allegations to the effect that he has learned from the oral deposition given by appellant what appellant's claims are with respect to the smaller note, and after denying such claims appellee proceeds with allegations to the effect that appellant is appellee's eldest son, born of his union with his first wife, who died and left him with six children, one being an infant two hours old; that appellee raised the children without a mother, and that appellant left home at the age of sixteen and remained away from his home for four years before returning; that at the age of twen-

ty-two appellant had smallpox and appellee nursed him through the sickness for forty-one days and thereafter cared for him and boarded him for four further years, at appellee's expense, and that about the year 1917 appellee signed appellant's note to purchase mules to haul material for the aviation field at Hicks, Tex., in which undertaking appellant was prosperous and purchased several Ford touring cars, one of which cars he gave to appellee; he further alleged that the value of such car was not sufficient remuneration for the extended valuable services rendered by appellee to appellant after appellant became twenty-one years of age; that the car was worth about $605, while the value of appellant's board for six years at $15 per month was $1,080, and the value of appellee's services in nursing appellant through the siege of smallpox was not less than $400; he further alleged that during the time appellant lived with appellee, appellant took one of appellee's horses and appropriated it to his own use, such animal being valued at $65; appellee further alleged that he accepted the Ford car from appellant as a gift and at no time promised appellant to give him a note therefor, or to pay other value therefor than the services he had rendered the appellant.

Following these allegations, the appellee shows by his pleadings and averments that the notes sued upon here are notes that have been renewed several times, covering a long period of years. Appellee avers that on or about May 1, 1926, appellant framed what appellee has since learned was a note for $919.34, "and by undue influence obtained defendant's signature thereto." That appellant claims such note was for the price of the Ford car, in the sum of $605, together with 7 per cent. interest thereon from November, 1918, to May 1, 1926, and appellee "further shows to the court that the plaintiff at the time he obtained defendant's signature did not explain to him what he desired defendant to sign." Appellee then alleges that he has since learned from appellant's oral deposition that on May 1, 1930, appellant had said note renewed for an amount in the sum of $1,213.45, being 8 per cent. interest on $919.34 for four years, for which no consideration was given appellee, "and on or about that date again by undue influence obtained the signature of the defendant to the said writing, and which signature was obtained without any consideration being given therefor." He

further alleges that afterwards, on May 1, 1932, the note for $1,213.45 was increased to $1,407.59, by having added to it 8 per cent. interest for two years, for which no consideration was given; and that a new writing was drawn up by appellant for the amount of $1,407.59, "and again by undue influence and without any consideration being given therefor the plaintiff obtained the signature of the defendant thereto; and the new note was made to bear 10% interest instead of 8% interest, and none of the contents of the new writing were explained to the defendant by the plaintiff, but at all times the defendant's lack of understanding, bad eyesight, and bad hearing were taken advantage of by the plaintiff; and this last writing is the instrument now sued on herein."

He further alleged that he did not realize what the alleged notes were until a short time before this suit was filed, when appellant, accompanied by his attorney, came to appellee and demanded of him that he give appellant a lien on his lands to secure the notes, and that at such time appellee found out that he "had signed some sort of paper of large liability for a car that had been given to him as a gift." He further alleges that the car having been given and delivered to him and accepted by him, he was in no way obligated at any time to execute a note therefor after more than seven years, since the car was given to him by appellant.

In the sixth paragraph of appellee's answer he alleges that the note for $3,203.30, sued on, is the last of a series of renewed notes "which the defendant has learned from the said oral deposition of the plaintiff that the said plaintiff obtained by undue influence used upon the defendant to obtain his signature thereto in the manner here and now set forth." He then alleges that the plaintiff in his oral deposition swore that such note was given for one that appellant had paid to one W. J. Rogers for the appellee, and that such note included other charges that appellant had made against appellee for other notes, goods, and merchandise. He then alleges that he at one time did owe said Rogers jointly with appellant three small notes, but that he, appellee, paid his portion of the debt when the notes fell due.

Appellee then alleges that he believes, and has reason to believe, that appellant took such notes and calculated interest on them for more than ten years at 7 per cent. interest and added this to the principal

amount of such three notes and did, on May 1, 1926, "draw up a paper which the defendant has since learned was a note for $1937.86 and did then by fraud and undue influence obtain the signature of defendant thereto, for which signature and execution of the said alleged note the plaintiff gave to the defendant no consideration, and the defendant at that time did not know that such writing was a note and did not so learn until a short time before this suit was filed, when the plaintiff came with his lawyer and demanded of the defendant that he give him a lien on the land of the defendant for security for the payment of the alleged note. It was then that defendant learned that he had signed a note for a large liability that the plaintiff claimed of him, the defendant." He then alleged that after obtaining his signature to such note, in May, 1926, thereafter on May 1, 1930, appellant added $620.11 of interest to the above-described note, for which amount there was no consideration given by appellee, and that at such time appellant on such date "drew up a new writing, now alleged to be a note, and again by undue influence obtained the signature of the defendant thereto and without giving any consideration therefor and without informing the defendant that he was signing a note of large liability." He alleged that such sum of interest added to the face of the old note made an amount of $2,557.97, which was written in the face of the alleged new note and made to bear 8 per cent. interest, for which there was no consideration.

He further alleged that on May 1, 1932, "the plaintiff again deceived the defendant and by undue influence obtained the signature of the defendant to another alleged note and the instrument sued on herein in the sum of $3203.30, bearing 10% interest, which the defendant has since learned from the said deposition was made up of more interest in the sum of $409.26 on the alleged $2557.97 note for two years at 8% and two other notes and interest on two other notes in the sum of $49.77, which was an excessive amount for the time and rate of the said two notes; but the said two other notes of $58.80 and $127.50 dated Feb. 1, 1930, and Nov. 26, 1929, were paid by the defendant before May 1, 1932, and they could not properly form any part of the note sued on herein. That said note sued on herein for the sum of $3203.30 bearing 10% interest was obtained from the defendant without any

explanation being given thereof by the plaintiff to the defendant, and the plaintiff gave no consideration for, and said note was without consideration passing to the defendant for his execution or signing of same."

Following these allegations, appellee alleges that he paid the two small notes, aggregating $186.30, with interest, by pasturing fifty head of stock for the appellant for three years prior to May 1, 1932, which pasturage was reasonably worth $900, and that he further paid appellant for other merchandise and material in permitting appellant to keep $35 that a motorist paid to appellant for appellee for injuring one of appellee's cows, and that appellant converted to his own use during the times alleged a wagon belonging to appellee, valued at $25, and that appellant during such time obtained for his own use a team of horses from appellee for three months at the reasonable value of $75. He further alleges that "during the year 1930, when plaintiff was taking advantage of defendant that he obtained much wheat and oats from the grainary of the defendant, the amount of which is unknown to the defendant, and he cannot here allege it." That during all of those days he and appellant were on good terms and he had full confidence in appellant; that at all times he would receive fair treatment at the hands of plaintiff and that no advantage would be taken of him in any way by his son, appellant, and that he fully trusted appellant in every way.

In the seventh paragraph of the answer appellee specifically alleged that previous to the year 1927 he was indebted to Mrs. Nellie Rogers, wife of W. J. Rogers, for whom the said Rogers was a trustee in certain deeds of trust to secure certain indebtedness, amounting to more than $10,-000, but that the appellant did not pay any part of such indebtedness and did not receive from appellee any note for having paid any part of such indebtedness; that such indebtedness and the above-mentioned three small notes were the only notes that appellee ever owed Rogers and wife. He further alleged that the Rogers indebtedness of more than $10,000 was a lien on both farms owned by him and represented the purchase price of such farms, and that the notes were never at any time transferred to appellant, but were transferred to Mrs. Nellie Rogers by the holders, and that appellee refinanced the indebtedness by negotiating two loans from

the Houston Land Mortgage Bank, as shown by the deed of trust records in Tarrant county; that with these loans the indebtedness due Mrs. Rogers was paid to her in March, 1927.

Appellee closes his voluminous plea with the prayer that the trial court enter judgment dismissing the cause; that he go hence without day and recover his costs, and that judgment be given that the plaintiff take nothing, and "for such other and further relief, both general and special, in law and equity, to which he may be entitled, and for which he will ever pray."

■ Appellant, by a proper pleading, urged a special exception to the first plea of no consideration, calling attention to the fact that the allegations were vague, indefinite, conclusions of the pleader, and did not put the plaintiff upon notice as to what the defendant asserts constituted undue influence. We think this exception, which was overruled by the trial court, should have been sustained.

■ The further special exception on the part of appellant, addressed to the second paragraph of said sworn plea, attacks the language as being vague, indefinite, and does not put the plaintiff upon notice of what the defendant expects to show and does not show what acts or conduct on the part of plaintiff constitute "a series of fraudulent and designing means." Appellant further excepted to such paragraph because the allegations are prejudicial and inflammatory. The exceptions are well taken and should have been sustained by the trial court instead of being overruled.

Similar special exceptions were addressed to paragraph 4 of appellee's answer, which contains his second plea of no consideration. These exceptions are well taken and should have been sustained by the trial court instead of being overruled.

■ Appellant specially excepted to the allegations in paragraph 5 of appellee's pleading, wherein appellee alleges that he learned from the oral deposition certain matters, the exception being that these allegations are immaterial, irrelevant, prejudicial, and constitute no proper defense to appellant's suit. The court erred in overruling such exception.

■ Appellant specially excepted to the second paragraph of paragraph 5 of appellee's answer, which relates to appellant being appellee's oldest son, born of his first wife, who died and left him with six children, one being an infant two hours old, which children he raised without a mother, and that afterwards appellant left home at the age of sixteen and remained away from home for four years, then came back and at the age of twenty-two had smallpox, defendant nursing him through such illness for forty-one days, and thereafter cared for him and boarded him for four years at appellee's expense, and in or about the year 1917 appellee signed appellant's note to purchase mules to haul material for the aviation field, at which employment appellant was prosperous and purchased several Ford touring cars, from which he made a gift of one in November, 1918, to appellee; that the value of the car was not sufficient remuneration for the value of the services rendered by appellee to appellant after he became twenty-one years of age; that the car was worth $605 and the value of appellant's board for six years was $1,080, and the value of appellee's services while nursing appellant through his smallpox illness was not less than $400; and that appellant during the six years mentioned took one of appellee's horses and appropriated it to his own use, which was of the value of $65.

The exceptions leveled in these allegations are that they are immaterial, irrelevant, highly prejudicial, and constitute no proper defense to plaintiff's cause of action; also that such allegations attempting to set up an offset and counterclaim to plaintiff's cause of action are barred by both the two years' statute of limitation and the four years' statute of limitation (Vernon's Ann. Civ. St. arts. 5526, 5527) and the further exception that all of the allegations, to the effect that appellant by undue influence obtained the signature of appellee, are vague, indefinite, are conclusions of the pleader, and do not point out what appellee expects to prove to constitute undue influence. These exceptions are well taken and should have been sustained instead of being overruled.

■ Appellant specially excepted to the allegations of paragraph 6 of appellee's answer, in which appellee alleges "that the plaintiff did by fraud and undue influence obtain the signature of the defendant" because such allegations are vague, indefinite, prejudicial, and inflammatory and do not put the plaintiff upon notice of what the defendant expects to show constituted fraud and undue influence. This exception was well taken and should

792

have been sustained by the trial court instead of being overruled.

■ Appellant further specially excepted to the allegations in paragraph 6 of appellee's answer, in which he alleges: "That defendant further alleges that during the year 1930 when the plaintiff was taking advantage of this defendant that he obtained much wheat and oats from the grainery of the defendant, the amount of which is unknown to the defendant and he cannot here allege it. The defendant shows to the court that during these days that he and the plaintiff were on good terms and the defendant had full confidence in the plaintiff, that he, the defendant, did at all times receive fair treatment at the hands of the plaintiff, and that no advantage would be taken of him in any way by his son, the plaintiff, and defendant fully trusted him in every way."

The exception being that the allegations are highly prejudicial and inflammatory, constitute no proper defense to plaintiff's cause of action and are made solely for the purpose of prejudicing the minds of the jury against the plaintiff. The exceptions are well taken and should have been sustained by the trial court instead of being overruled.

■ Appellant specially excepted to the allegations found in paragraph 7 of appellee's answer, which concerned the Nellie Rogers notes, the liens securing the same, the refinancing of such liens and debts by appellee, and that appellant neither acquired any of such notes nor paid off any of such debt. The exceptions being in part that these allegations constitute no defensive matter to plaintiff's cause of action, are statements of matters entirely foreign to and not related to the matters in controversy, etc. · The exceptions are well taken and should have been sustained by the trial court instead of being overruled.

Appellant pleaded a general denial and followed this by pleading that any indebtedness asserted by appellee as owing to him by appellant is and was barred by the two years' statute of limitation and the four years' statute of limitation long prior to the filing of appellee's answer in this cause.

The cause was tried to a jury. At the close of the taking of testimony, appellant requested the court to give a peremptory instruction to the jury covering the small

note sued on, and likewise a peremptory instruction covering the large note sued on; both requests were rejected by the trial court and exception taken.

The cause was submitted to the jury in the form of six special issues, four being in the main charge and two being requested by appellee.

Question No. 1, in substance, is: Does the jury find there was no valuable consideration given by appellant to appellee for the execution and delivery of the $3,-203.30 note? To which the jury answered, "Yes." Question No. 2 instructed the jury that if they answered question No. 1 "Yes," they need not answer the second question, which inquired what was the value, if any, of the consideration that passed. Under the instruction of the court, no answer was made to question No. 2. Question No. 3 inquired whether the jury found there was no valuable consideration given by appellant to appellee for the execution and delivery of the $1,407.59 note? To which the jury answered, "Yes." In question No. 4 the court instructed the jury that if they answered question No. 3 "Yes," they need not answer question No. 4, which inquired what was the value, if any, of the consideration that passed between appellant and appellee. At the request of appellee, the court submitted a special issue for the jury to find whether appellant gave the Ford touring car to appellee as a gift. The jury answered this question, "Yes." The court likewise submitted to the jury, at appellee's request, an issue inquiring whether appellant paid W. J. Rogers what appellee owed on the three notes, in the sum of $1,109.80. To which the jury answered, "No."

On this verdict the court rendered judgment that appellant take nothing as against appellee, and from this judgment the appeal is taken.

Appellee specially pleaded the giving of the first note and the successive renewals down to and including the notes sued upon in this cause, and specially introduced in evidence the original notes and such renewal notes as he had in his hands, and appellee testified that each time he executed a renewal note the appellant gave him the old note representing the debt, which was renewed. With reference to the first note, which was executed for the purchase price of the Ford car, appellee testified that when he signed it appellant presented him with the note, and that appellant said:

"Here is a note I want you to sign," and appellee testified, "and I signed it." He further testified: "He told me it was for the car." In his testimony concerning the renewal of the first notes, appellee testified: "He wrote me to come in and renew these notes. * * * He just handed them to me and I signed them." Appellee testified that when the last notes were signed, he signed them for Mrs. Williams, who is appellant's stenographer; that he came in at appellant's request to renew the notes, and, after testifying that he signed them, he said: "But I never read them half the time; I don't think I had my glasses."

When appellee was asked the direct question whether or not he himself paid W. J. Rogers all he owed Rogers, his answer was: "He said I did." When asked about signing one of the renewal notes, given for a prior note growing out of the debt appellant claims he paid to Rogers for appellee, appellee explains his signing such note as follows: "He claimed that he had paid Rogers; after I went over and asked Rogers and he says I didn't owe them, I found out he was putting things in here and charging me for things when I didn't owe Rogers anything." When asked why he executed the note and the several renewals for the purchase price of the car, which he claims appellant gave him, he said: "I thought if he was sorry and ornery enough to give it to me and wait eight years and ask for a note, I would pay him for it." When asked if he knew what he was doing when he executed this note for the car, he replied, "Yes I did." Appellee admitted that W. J. Rogers was present in his home when the first two notes were executed by him, payable to appellant, one of which represented the Rogers debt, and that Rogers took part in the conversation had about the debts owing by appellee to appellant, and he credits Rogers with discussing the car note only. It was undisputed that W. J. Rogers figured up the principal and interest due on the first two notes executed by appellee, payable to appellant, and that this was done in appellee's home, when appellant asked for notes to cover the debts he then claimed appellee owed him.

On cross-examination, appellee was asked if the main thing he was squabbling about concerning the two notes in the suit was not the fact that there was too much interest charged and the fact that appellant owed him for an illness he had when appellant was a young man, and his answer was

that appellant was over twenty years of age. Being pressed for an answer if those are not the main things he is kicking about, appellee answered that appellant owes him for six years' board, for three years' pasturage of forty or fifty head of his stock, and for the cow that a motorist ran over. When asked why he signed the renewal notes and did not take out what he claims appellant owes him, he replied, "Because I never intended to take it out until I found out he was crooking me. That is why I done it."

Appellee was permitted to testify to a number of things he had done for appellant which are not included in his pleadings, and on cross-examination when he was asked if he claimed appellant owed him anything on these matters, he answered: "No, I didn't charge him anything, but if he is charging me for this car, I have a right to charge him for what he has beat me out of." Appellee was then asked if he wanted to offset the car note with what he claims appellant owes him, and his answer was: "Well, if they was to give me a judgment against him for $1000.00 I would not ask him to pay it." He was then asked: "You would want it offset against the judgment he gets against you?" To which he answered: "I am showing the jury what I have done for him and the way he is treating me, not because I want to get a nickel out of him."

Appellee specifically brought out on cross-examination of appellant the fact that appellant wrote on the back of the car note words to the effect that if appellant died before appellee the note was canceled, and appellant explained that this was done because his father, appellee, did not like appellant's wife and did not want her to collect the note from him in the event appellant died first. Appellee nowhere denies this testimony, but, in substance, corroborates it.

On cross-examination, appellant was asked whether or not at the time his father signed the first note he told his father, appellee, that the account was out of date and he did not have to sign it, and appellant answered, in substance, that he did not, and that the only time appellee ever mentioned any debt being out of date was one time when he came over and said that if he were little enough to do it, he could defeat the debt, because it was out of date. This is the substance of the testimony given by appellant, and he said that for this reason

he began to make the renewal notes every two years.

It is quite apparent from this record that there was a bona fide contention upon the part of appellant that appellee was indebted to him, and, thus contending, that appellee executed the two notes which were subsequently renewed from time to time until they grew into the notes and amounts sued upon herein. We believe that the issues in this case are controlled by the decision of the Supreme Court in the case of Hunter v. Lanius, 82 Tex. 677, 18 S.W. 201, 205, in which the following language is used: "So, a note is supported by a sufficient consideration, if executed to secure the abandonment of a suit brought to enforce a doubtful right, or in compromise of a disputed claim made in good faith, though it ultimately appears that the claim was without merit." See, also, Walker-Smith Co. v. Pouns (Tex.Civ.App.) 256 S. W. 613.

We are of the opinion that the burden of proof being upon appellee to show a want of consideration, he did not meet the burden thus imposed upon him.

Appellee did not ask in his pleadings for any offset or counterclaim judgment against appellant and testified in so many words that he did not want any such relief, but that he was testifying to the several matters mentioned by him just to put them before the jury. No evidence was introduced sufficient to raise any issue of fraud, overreaching, or undue influence exerted as a means of obtaining appellee's signature to the first notes executed or to any renewal notes thereafter executed by him.

The findings of the jury are wholly immaterial, in the light of the undisputed record, which shows that appellant and appellee had a number of transactions, because of which appellant claimed that appellee was indebted to him, and which claims were adjusted between the parties by the execution of the first notes, which were thereafter renewed from time to time.

They thus settled their differences, and the justness of the claims cannot be inquired into, in the absence of fraud, accident, or mutual mistake; none of which issues is raised by the evidence adduced.

In the light of the record as same comes to us, we are of the opinion that the request made by appellant for a peremptory instruction covering each of the notes sued upon should have been granted by the trial court, and that it was error to refuse the same. And we conclude that the judgment of the trial court should be reversed and judgment here rendered awarding appellant recovery upon the two notes sued upon as prayed for by him.

### On Motion for Rehearing.

#### PER CURIAM.

There is before us a motion on the part of the defendant in error, wherein the movant asks for a rehearing, for a postponement of the submission of the motion for rehearing, and for the privilege of arguing orally the motion for rehearing.

■ The function of a motion for rehearing is to present to the court the errors of law which have been committed, in the opinion of the movant, by the court, together with such argument, authorities, and statement from the record which may, in the opinion of the movant, support the motion.

■ The motion before us contains statements, assertions, and allegations in which there are slurs, innuendos, and contemptuous charges addressed to and directed in part at all of the members of the court, and particularly at the member whose duty it was to write the opinion heretofore handed down in this cause. Counsel for the movant should know that these objectionable allegations, statements, and charges have no place in a motion such as this, or in any other document or paper filed in any court. Counsel for the movant has made three requests, as is pointed out above. Two of these are solely for his comfort and convenience, and the granting of these lies solely within the discretion of this court. And yet, coupled with these two requests for distinct favors to be granted him, counsel for the movant uses language tainted with contempt and replete with disrespect.

This court is now composed of men, as it has been in all times past, who have no personal interest in either the litigants or the litigation brought before them, and who stand ever ready to give every litigant, so far as the law and rules of court permit, the privilege of and right to protect his interest in a respectful and lawful manner before this court. Therefore, because the attorney for a litigant does not see fit to observe the proprieties and amenities which his oath as an officer of the court requires of him, is no reason why the litigant should be caused to suffer.

Therefore, it is the order of this court that defendant in error's motion for a rehearing be stricken from the files, and that defendant in error be given fifteen days from this date within which to file an amended motion for rehearing in the proper form, purged of all extraneous matter, innuendos, scurrilous charges, and contemptuous statements.

## On Second Motion for Rehearing.

BROWN, Justice.

Defendant in error, in his brief and in his motion for a rehearing, ignores the principle of law that governs the disposition of this cause.

█ If there be a bona fide claim on the part of A that B owes him, and B executes a note to A because of such contention, B cannot raise, as a defense, no consideration for the execution of the note. The consideration is the settlement between the parties, based on the claim made.

The evidence in this case establishes, without dispute, that plaintiff in error asserted what he believed to be a bona fide claim that defendant in error was indebted to him; that one Rogers, to whom plaintiff in error claimed to have paid debts due Rogers by defendant in error, was present when the contention was discussed between the parties, and that Rogers figured the amounts thus claimed to be due plaintiff in error by defendant in error, which grew out of the transaction with him, as well as the amount that was claimed to be owing to plaintiff in error by reason of a sale of an automobile to defendant in error. Two notes were then drawn up and defendant in error signed and delivered them to plaintiff in error. These notes were renewed from time to time, and this suit is predicated upon the last renewal notes.

The evidence shows that Rogers was a friend to both defendant in error and plaintiff in error. There is nothing to show that he was not trusted by both parties in the matter of figuring the amounts of the notes to cover the indebtednesses owed by defendant in error to plaintiff in error. No effort was made by defendant in error to plead that Rogers was guilty of any fraud in the transaction, or that he colluded with plaintiff in error to defraud or overreach defendant in error, and no evidence was introduced tending to establish any such fact, and no issue requested to be submitted to the jury for a finding thereon.

█ Defendant in error could, if the facts had warranted that defense, have pleaded payment; but such would have been confined to payment since the execution of the first settlement notes.

█ The pleadings do not raise the issue of payment, but if they may be construed to do so, the evidence is insufficient to establish the issue, and if it can be said that the evidence is sufficient to establish the issue, it has been waived and abandoned by defendant in error, because he did not request the jury to find on any such issue, and the verdict is silent thereon.

Defendant in error did not plead "accident" in the execution of the notes, but if it can be said that his pleading is sufficient to raise such issue, the evidence is insufficient to raise the issue, and if it can be said that the evidence is sufficient to raise such issue, defendant in error has waived and abandoned the issue, because he did not request the jury to find on any such issue, and the verdict is silent thereon.

Defendant in error's pleading is not sufficient to raise the issue of "fraud" or "misrepresentation" in the execution of the notes, but if it can be said that his pleading is sufficient to raise either or both of such issues, the evidence is insufficient to raise either of such issues, and if it can be said that the evidence is sufficient to raise either or both of such issues, defendant in error has waived and abandoned the issues, because he did not request the jury to find on either, and the verdict is silent thereon.

Defendant in error did not plead "mutual mistake" in the execution of the notes, but if it can be said that the pleading is sufficient to raise such issue, the evidence is insufficient to raise the issue, and if it can be said that the evidence is sufficient to raise the issue, defendant in error has waived and abandoned such issue, because he did not request the jury to find on such issue, and the verdict is silent thereon.

Defendant in error's pleading is insufficient to raise the issue of a set-off or counterclaim against plaintiff in error, but if it can be said that the pleading is sufficient to raise such issue, the evidence is insufficient to raise the issue, and if it can be said that the evidence is sufficient to raise the issue,

defendant in error has waived and abandoned the issue, because he did not request the jury to find on such issue, and the verdict is silent thereon.

In the case of Camoron v. Thurmond, 56 Tex. 22, we find the following statement: "A deliberate settlement of a controverted right will not be set aside except for those cases which, like fraud, mistake, or undue influence, invalidate all contracts." Citing the old landmarks, French v. Shoemaker, 14 Wall. 314, 20 L.Ed. 852, and Bennet v. Paine, 5 Watts (Pa.) 259, 261.

In the case of O'Fiel v. Janes (Tex.Civ. App.) 269 S.W. 1074, 1082, affirmed (Tex. Com.App.) 280 S.W. 163, we find the following statement of the law: "In passing upon the effect of compromise settlements, no investigation into the character or value of respective claims will be made; it being sufficient that the parties thought there was a question between them. * * * When a right is doubtful, or is controverted, or where the object is to avoid or settle litigation, a compromise duly executed will not be set aside by the courts if the parties acted in good faith, and there is no fraud or misrepresentation." This well-considered opinion points out the rule that the settlement must be enforced even though it afterward appear that the claim was not in fact good, when made.

Defendant in error's evidence establishes the fact that, at the time of the execution of the first notes, there was a controversy between the parties over what defendant in error owed plaintiff in error, and that the notes were executed to settle the controversy.

If no such controversy existed, at that time, between the parties, then defendant in error must, of necessity, have fully understood and recognized the indebtedness due by him to plaintiff in error, unless he executed the notes by reason of fraud, misrepresentation, mutual mistake, accident, duress, undue influence, or overreaching.

Defendant in error's pleading is insufficient to raise the issues of "undue influence," or "duress," or "overreaching," in the execution of the notes, but if it can be said that such pleading is sufficient to raise any one or all of such issues, nevertheless the evidence is insufficient to raise any one of such issues, and if it can be said that the evidence is sufficient to raise any one, or even all, of such issues, then defendant in error has waived and abandoned them, because he did not request the jury to find on any of such issues, and the verdict is silent thereon.

In the case of Gilliam v. Alford, 69 Tex. 267, at page 271, 6 S.W. 757, 759, the learned Judge Stayton quotes from Pomeroy's Equity in laying down the rule that "voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge, or means of obtaining knowledge, concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision."

In addition to the authorities cited in the original opinion and hereinabove, we cite Sutton v. Schoellkopf (Tex.Civ.App.) 62 S.W.(2d) 318 (writ refused); Scott v. Lott (Tex.Civ.App.) 247 S.W. 685 (writ dismissed), and Walker-Smith Co. v. Pouns (Tex.Civ.App.) 256 S.W. 613.

Defendant in error urges, in his motion for a rehearing, that the exceptions leveled at his pleading should not have been sustained, and apparently urges that, if the exceptions should have been sustained, then this court is without authority to do other than reverse the judgment of the trial court and remand the cause for a new trial.

But defendant in error is unmindful of the fact that he was allowed the full benefit of the allegations and assertions, which we believe are subject to objection, and, bolstered up by such allegations and assertions, nevertheless he has waived and abandoned the issues he attempted to thereby raise. His waiver and abandonment is open and apparent, from the record, as to all issues but that of "no consideration" for the execution of the first notes and the subsequent renewals. But instead of raising the issue of no consideration, the undisputed evidence shows there was a definite and lawful consideration for the notes, as is pointed out by us.

The bar frequently complains that the appellate courts give little thought to assignments of error based upon exceptions to inflammatory, prejudicial, and otherwise objectionable allegations. We do not intend to

intimate that such complaint is well-founded, but we do intend to say that when such exceptions are urged before us and a study of the record discloses that the pleading thus attacked is subject to a proper attack and just criticism, this court will not pass by the assignments of error rightfully presented.

This court expects of every litigant that he observe the plain rules governing proper pleadings, and, where he has not done so, we will, on proper assignment of error, point out the violation of such wholesome rules.

■ In the case of Parker v. Allen, 33 Tex.Civ.App. 206, 76 S.W. 74, 78 (writ refused), the court had before it a pleading that was general and not specific as to want of consideration of, and fraud in the execution of, the instruments involved in the suit, which pleading set up the purported consideration and sought to deny it in general terms. The opinion states: "The existence of the several instruments by which plaintiff conveyed and released to the defendants all of his interest in the subject-matter of this suit being admitted in his petition, it follows that, unless the facts alleged in said petition are sufficient to avoid each and all of said instruments upon the ground of fraud, duress, or want of consideration, the petition fails to state a cause of action, and the general demurrer was properly sustained. A general allegation of fraud or duress is not sufficient to present such issue, but the facts relied on to show same must be pleaded. There is no allegation of fact in this petition from which fraud could be presumed. No misstatements of fact by any of the defendants is alleged by which plaintiff was misled or deceived, and no concealment of the truth or deceitful act of any kind is charged against any of the defendants. We think it clear that the petition is fatally defective in its attempt to avoid the instruments above mentioned on the ground of fraud. * * * The petition alleges in general terms that said contracts and agreements were without consideration, but the facts stated in the petition show a valuable consideration for each of said contracts."

■ We do not believe that the pleading before us stated a defense to either note sued upon, but, after being given the full benefit of every allegation in his pleading, the evidence, introduced by defendant in error, does not raise any defensive issue to either note.

A full and complete plea of want of consideration does not shift the burden of proof of consideration to the shoulders of plaintiff in error. The notes import a consideration, and a proper plea of want of consideration merely puts that issue before the court, or jury, and the burden still rests upon the defendant in error to establish want of consideration for the execution of the notes. In this cause, the defendant in error wholly failed to meet the burden.

The motion is overruled.