Phillip MARKMAN et al., Appellants,

v.

J. J. GAITZ, Appellee.

No. 16157.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 9, 1973.

Supplemental Opinion Aug. 23, 1973.

Rehearing Denied Oct. 4, 1973.

Frank A. Casebier, Austin, for appellants.

Stephen Perel, Houston, for appellee.

PEDEN, Justice.

Defendants appeal from a judgment on a jury verdict based on the concept of compromise and settlement in favor of real estate broker J. J. Gaitz for damages of $4800, exemplary damages of $2500 and attorney's fees of $2500.

This case was the subject of a prior appeal to the 14th Court of Civil Appeals. The opinion in that matter is published at 482 S.W.2d 391 (1972, no writ).

We review the allegations made in the plaintiff's petition: As a real estate broker he entered into an agreement in September, 1969 with defendants Isaac Tapper and Harry Pepper, partners, to sell three of their apartment projects. This was part of a continuing business relationship he had with Pepper individually and as agent for Pepper and Tapper, and under this arrangement plaintiff secured defendants Phillip Markman and Jack Markman as prospective purchasers.

However, Pepper and Tapper accepted the benefits of plaintiff's efforts in their behalf and sold the three apartment projects to the Markmans, d. b. a. Markman Brothers Investments, for about $320,000.

Under their continuing agreement, Pepper agreed to pay plaintiff 6% of the sale price of the properties if he brought Pepper someone who bought the properties, but has never paid the $16,000 thus earned, so Pepper and Tapper have been unjustly enriched to that extent.

Alternatively, the defendants Markman entered into a conspiracy to defraud plaintiff of the money he was entitled to receive because of his efforts in behalf of Pepper and Tapper. This deliberate interference with contractual rights, as a result of the conspiracy between the defendants, resulted in plaintiff's being damaged in the amount of $16,000.

Because of the deliberate plan which caused the plaintiff's $16,000 loss, each de-

fendant should be required to pay punitive damages in the total amount of $25,000.

In the alternative, plaintiff would show that he reached a compromise settlement agreement with Jack Markman, individually and as agent for Markman Brothers Investments, to avoid litigation. Under such agreement Jack Markman agreed to pay plaintiff $4800 in consideration for plaintiff's agreement to allow the sale to be consummated and to refrain from any legal action to enforce the claim in dispute. Payment was to be by check for $1,000 and a note for the balance of $3,800. The check was issued, but the Markmans stopped payment on it, and they refused to sign the $3,800 note as they had agreed to do.

Alternatively, the Markmans agreed to pay $4,800 in settlement of an unliquidated claim; it was accepted by plaintiff, so it became an accord and satisfaction. The plaintiff's petition was concluded with his prayer for damages.

Defendants Phillip Markman and Jack Markman, individually and d. b. a. Markman Brothers Investments, are the appellants here.

In response to special issues the jury found 1) that Pepper gave an oral listing of the apartment projects to Gaitz, but 2) did not find from a preponderance of the evidence that such listing was given in the latter part of 1969, so the jury was not required to give answers to predicated issues asking 3) whether Jack Markman knew of such listing when he began negotiating to purchase the apartments, 4) whether Jack Markman, with intent to deprive Gaitz of compensation, induced Pepper and Tapper to sell the apartments, 5) whether Gaitz was deprived of money as a result of such inducement and 6) if so, in what amount.

The jury found in response to the other special issues 7) that there was a dispute between J. J. Gaitz and Jack Markman as to whether Gaitz was entitled to receive compensation in connection with the sale of the three apartment projects, 8) that Jack Markman and J. J. Gaitz reached an agreement for payment of money in connection with such dispute, 9) that Jack Markman agreed to pay $4,800 to J. J. Gaitz as a result of such agreement and 10) Gaitz should be awarded $2500. against Jack Markman, Phillip Nathan Markman and Markman Brothers Investments as exemplary damages.

Appellants' first four points of error are: 1) that the trial court erred in its submission of Special Issue No. 7 and in its holding or deemed finding that the settlement of the dispute between appellee and appellant Jack Markman was consideration for appellants' alleged promise to pay, because there is no evidence to support such submission, holding or finding; 2) that the trial court erred in such submission and in its holding or deemed finding because they are against the great weight of the evidence; 3) that the verdict is not supported by the evidence because there is no evidence of any bona fide dispute between appellee and appellant Jack Markman concerning appellee's right to compensation for the sale of the three apartment projects; 4) that the verdict is not supported by the evidence because the finding in response to Issue No. 7 is against the great weight of the evidence.

The record does not reflect that the appellants made any objections to the trial court's charge, but Rule 279, Texas Rules of Civil Procedure, provides that a claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict.

Special Issue No. 7 was apparently submitted under the theory of a compromise settlement agreement, the elements of which are 1) a bona fide dispute between the parties, 2) the parties entered into a compromise agreement to settle, 3) under the terms of the agreement the offending party agreed to pay (or otherwise perform) in consideration for the other party's promise to refrain from any action to enforce the claim in dispute and 4) one

party has performed his part of the compromise agreement while the offending party has refused to do so. 12 Tex.Jur.2d 300, compromise and Settlement.

Evidence of the existence of a bona fide dispute was a letter signed by Phillip Markman and Jack Markman's mother on behalf of Jack Markman and addressed jointly to Messrs. Tapper, Pepper and Gaitz dated April 9, 1970 stating in part:

"Dear Sirs:

"We would like to suggest that the group of us getting together to air out all of our grievances and to try to reach an amicable solution.

"We feel that basically we have a moral rather than a legal problem and it can only be solved among ourselves. Since we are all living in the same community, it seems practical for us to settle our disputes and get them behind us.

". . . .

"If we find at that time a friendly solution is unavailable, we will then step aside and let the matter go through legal channels. If the arrangement is acceptable but the date obligated, call us and we will plan another time and place."

The jury was entitled to determine from other evidence that Jack Markman realized Gaitz could disrupt the sale unless his claim for compensation was settled, because Pepper and Tapper would not sell the apartments to the Markmans unless the Markmans reached an agreement with Gaitz; also that Jack Markman told Pepper the Markmans would pay Gaitz, and Markman agreed with Gaitz that they would settle his claim by paying him $4800, that as a result Gaitz refrained from disrupting the sale, but that the Markmans did not pay Gaitz and did not intend to do so when the agreement was made.

Gaitz had no written sales contract as required by Sec. 28 of Art. 6573a, Vernon's Texas Civil Statutes, and his dealings concerning payment of compensation were initially with Pepper, not the Markmans, but the cost to the Markmans would be $4800 whether they paid it directly to Gaitz or added it to their payment to Pepper and Tapper for transmittal to Gaitz.

■ In any event, there is ample evidence of the dispute between Gaitz and Jack Markman to support the finding of the jury in Issue No. 7, and we hold that it gave rise to a claim, the compromise and settlement of which was enforceable by the plaintiff.

Under the provisions of Rule 279, T.R. C.P., absent any showing in the record of objections to the charge, we are to deem that the trial court found that there was consideration for the appellants' promise to pay the $4800.

"Consideration is essential to the existence of a valid and binding contract of compromise and settlement, and the courts will not inquire into the adequacy of the consideration. The mutual agreement of compromise is in itself a valuable consideration, sufficient to support the contract, the basic consideration being the release of the rights of the parties and the avoidance of the expense and annoyance of a suit. . . ." 12 Tex.Jur.2d 290, Compromise and Settlement § 6.

"A court will not investigate the character or value of the respective claims of parties to a compromise settlement, but will enforce the agreement if the parties thought that there was a question between them. The fact that one party had no right whatever does not affect the validity of the transaction if he was honestly mistaken in that regard. If a compromise agreement is in settlement of a claim asserted and disputed in good faith, it will be upheld notwithstanding the fact that the claim is invalid or unenforceable, has no actual foundation, or is tainted with fraud or usury.

"The binding effect of a compromise agreement does not rest on the validity

of the claim in fact, but on the claimant's good faith belief in its validity. Thus, a claim may be unenforceable by legal proceedings and yet rest on such a foundation as to make the claimant honestly believe in his right to recover and to make it a subject of honest dispute between the parties, so as to afford a sufficient consideration for an agreement to compromise and settle it. However, if the claim is founded on a prohibited transaction or one legally void, a compromise agreement cannot validate that which was legally invalid." 12 Tex.Jur.2d 293, 294, Compromise and Settlement § 9.

■ Clearly, Gaitz' oral agreement with Pepper for a real estate commission did not meet the enforceability requirements of Section 28 of Art. 6573a, The Real Estate License Act, but it was not an illegal or invalid agreement. See Clements v. Withers, 437 S.W.2d 818 (Tex.1969).

"A compromise agreement may validly rest on the fact that the asserted claim was doubtful, or was disputed. The fact that subsequently it appears that there was no merit in the claim or that there was no doubt as to its subject matter or amount does not affect the validity of the compromise settlement. It is sufficient if the parties considered the claim so far doubtful as to make it the subject of compromise. . . ." 12 Tex. Jur.2d 294, 295, Compromise and Settlement § 10.

Gaitz testified that his full commission would have been $16,000 and that he tried to get Jack Markman to settle by paying him $5000, but Markman wanted him to settle for a pittance; they finally agreed to settle on payment by the Markmans of a $1,000 check plus a note for $3,800.

". . . voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge, or means of obtaining knowledge, con-

cerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision." Gilliam v. Alford, 69 Tex. 267, 6 S.W. 757 (1887).

■ Markman does not contend and would not be heard to contend that his secret intention not to pay would vitiate the settlement agreement.

"It is settled that a compromise agreement made in settlement of a doubtful claim is supported by sufficient consideration." Williams v. Employers Mutual Casualty Co., 368 S.W.2d 122 (Tex.Civ. App. 1963, no writ), and cases cited therein.

We overrule appellants' first four points.

Their fifth point is that the trial court erred in failing to render a judgment for appellants on their motions for summary judgment and for instructed verdict, thereby holding that the contract sought to be enforced need not be in writing as a contract for a real estate broker's commission.

■ We find no merit in these contentions. The denial of the motion for summary judgment under the facts of this case was not an appealable order, and the recovery here was based on the concept of compromise and settlement, not on enforcement of the oral contract for a real estate commission.

■ Our Supreme Court held in Clements v. Withers, 437 S.W.2d 818 (1969) that the unenforceability of such an oral contract is no defense to an action for tortious interference with its performance, and we hold that it is not a valid defense

to an action for compromise and settlement of a claim arising against purchasers who promised both the seller and the broker that they would "take care" of the broker.

We also overrule the appellants' sixth and seventh points of error which are no evidence and great weight of the evidence points attacking the deemed findings and assessment of exemplary damages. We have already noted that under the evidence the jury was entitled to find that the Markmans did not intend to pay Gaitz when they promised him and Pepper that they would, thus inducing them not to disrupt the sale. Jack Markman testified that he did not promise to pay $4800.

■ Actionable fraud can be based upon a promise of future action with a present intention not to perform. Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.1971).

"Where, as here, the representation is a promise to do something in the future and there exists at the time of the representation an intention not to perform, there is the representation of an existing fact. While a mere failure to perform is not sufficient to prove the existence of an intention not to perform at the time the promise is made, where the party allegedly making the promise denies making the promise, there is sufficient evidence to support a finding that there was the absence of intention to perform when it was made. Texas & N. O. Ry. Co. v. Thompson, 1 S.W.2d 938, C.C.A., aff'd 12 S.W.2d 963, Com.App." Stone v. Williams, 358 S.W.2d 151 (Tex.Civ. App.1962, writ ref. n. r. e.).

■ It may not be necessary to show the existence of malice to support the recovery of exemplary damages where the defendant's acts are accompanied by fraud or other aggravating circumstances. Clements v. Withers, supra, citing Briggs v. Rodriguez, 236 S.W.2d 510 (Tex.Civ.App. 1951, writ, ref. n. r. e.).

We sustain the appellants' eighth and last point of error, which asserted that the

trial court erred in rendering judgment against the appellants in the amount of $5000 as exemplary damages because such judgment is contrary to the jury's finding and assessment of $2500 as proper exemplary damages.

■ The trial court instructed the jury that in fixing the amount, if any, of exemplary damages it could take into account the plaintiff's expenses for legal services. The jury assessed exemplary damages at $2500, but in the judgment the trial judge added another $2500 as "reasonable attorney's fees as stipulated between the parties . . . ." This appears to be, at least in part, a double recovery of attorney's fees and no stipulation as to attorney's fees appears in the record (except in the judgment), so under the provisions of Rule 11, Texas R.C.P., it will not be enforced.

Appellee submitted a cross-point conditioned on our reversing and remanding this cause. Since we have not done so, we need not consider it.

We affirm this cause provided the appellee files a remittitur of $2500 within fourteen days after the date of this opinion; otherwise we will sever the appellee's cause against appellants, will reverse and remand it to the trial court and will consider appellee's cross-point complaining of the dismissal of his cause against Pepper and Tapper.

## SUPPLEMENTAL OPINION ON FILING REMITTITUR

On August 9, 1973, we stated in a written opinion that if the appellee would file a remittitur of $2500 by August 23, 1973 we would affirm the judgment of the trial court. Appellee has filed the suggested remittitur.

Accordingly, as of this date, the judgment of the trial court, having been reduced by the $2500 remitted, is affirmed.