In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00293-CV
_____

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,
Appellant

V.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-02-02039-CV**

**OPINION**

At issue in this appeal is whether the Uniform Condominium Act

makes an agreement to settle a subrogation claim, which the Act requires

to be waived, enforceable.[1] On cross-motion for summary judgment, the

_____

[1]Tex. Prop. Code Ann. § 82.111(d) (requiring the insurer to waive its right to subrogation under the policy against a unit owner); *id*. § 82.004 (prohibiting persons from varying the requirements of Chapter 82 by agreement "[e]xcept as expressly provided by this chapter"[]).

1

trial court refused to enforce the agreement and rendered a take-nothing judgment against the plaintiff who sued the defendant to enforce a settlement agreement of an insurance subrogation claim the Act required the insurance company that brought the suit to waive.

Finding no error, we affirm.

Background

*The Fire*

Dana and Donna Evans own a unit at The Shore, a high-rise condominium in Austin, Texas. In May 2019, an accidental fire, which investigators determined originated in the Evanses' unit, damaged property in several units and in the common areas on several floors of The Shore.[2]

The duties of the entity responsible for managing The Shore, duties that include obtaining insurance against risks of loss like fires, are

---

[2]In general, the Declaration filed of record for The Shore created a separate ownership interest for the property that each unit owner kept inside the walls of the owner's unit. That said, the owner of a unit also owns an undivided interest in the *Common Elements*. The Declaration defined the *Common Elements* broadly to mean "[a]ll portions of the Condominium, including both the General Common Elements and Limited Common Elements, and including the Residential Unit's interest in the Master Common Elements but excluding the Units."

2

created by filing a document referred to as a declaration in the real property records of the county where the condominium is built.[3] A limited partnership formed The Shore in 2006, dedicating the property to be used as a condominium by filing a "Condominium Declaration" (the Declaration) in the real-property records of Travis County, Texas. Under the Declaration, the purchasers of units at The Shore became members of The Shore Condominium Association, Inc. (the Association). Under the Declaration, the Association is responsible for managing the Association's affairs. The owners of the units must pay Association dues, which are used among other things to purchase insurance to cover the property at The Shore. To comply with that obligation, the Association bought an insurance policy from Great American Insurance Company of New York, which insured the property The Shore was required to insure under the Uniform Condominium Act against the risk of loss from fires, less the policy's deductible.

After the May 2019 fire, Great American paid the claims presented to it that were covered under its policy from the fire. The claims Great American paid came from owners of units who had property damaged in

---

[3] *Id.* §§ 82.051(a), .111.

their units, including the Evanses. Great American also paid to repair damages that occurred to property in the common areas of the floors damaged in the fire. In the areas outside the units, the owners of the units hold an undivided interest, which The Shore's Declaration defines as *Common Elements.*[4]

The Declaration also required the Evanses to obtain insurance on the property in their unit. And the Declaration required them to obtain "insurance covering damage to other Units or property located therein, the cause of which originates from such Owner's Unit." To comply with their obligations under the Declaration, the Evanses bought a condominium policy issued by Nationwide Mutual Insurance Company. Nationwide's policy covered the Evanses for up to $300,000 per occurrence for their negligent "ownership, maintenance or use of real or personal property[.]"

### The Settlement

Great American's settlement is tied to an email dated December 16, 2019, that its attorney Chris Surber, sent Nationwide's adjuster, Ross Ver Helst. In the email, Great American offered "to resolve any and all

---

[4]*See* n.2.

claims and causes of action it has or may have against Dana and Donna Evans arising out of and related to the [May 2019] fire for the total amount of **$373,212.93 or Dana and Donna Evans' insurance policy liability limit, whichever is less.**"[5] On January 16, 2020, Ver Helst sent Surber an email and responded to his settlement demand:

> Chris, this is confirmation that we are accepting your demand for the damages to The [Shore] Condominium Association for the remainder of our insured's liability limit. We have previously settled subrogation claims for two of the condo unit owners and have remaining liability limit[s] of $266,540.25 of our insured's $300,000 liability policy limit.[6]

---

[5]*See* Tex. Prop. Code Ann. § 82.111(a) (requiring the unit owners association, to maintain property insurance on the insurable common elements if that insurance is reasonably available); § 82.111(b) (when the building contains units with "horizontal boundaries described in the declaration," the unit owners association must maintain insurance when it is reasonably available that "include[s] the units," but the insurance "need not include improvement and betterments installed by unit owners").

[6]Surber's demand letter and Ver Helst's emails refer to the condominium association responsible for managing The Shore as "The Waterfront Master Condominium Association." The Clerk's Record, however, shows that as of May 2019 the correct legal name for the condominium where the fire occurred is The Shore's Condominium Owner's Association, Inc. The Clerk's Record includes a corrective amendment, which shows The Waterfront Master Condominium Association, Inc. became The Shore Condominium Association, Inc. in 2006. In August 2019, an endorsement was added to Great American's policy naming "The Shore Condominium Association" as a named insured under Great American's policy, with the name change retroactive to the policy's inception. For clarity and to avoid confusion, we have chosen to

On receiving Ver Helst's email, Surber sent Ver Helst the following email:

> My client accepts your offer of $266,540.25. Please make the check payable to "Gauntt, Koen, Binney & Kidd LLP as trustee for Great American Insurance Company of New York" and mail the same to my attention at the below address. A copy of my firm's W9 is attached. If you require a release, please send the same as soon as you can.
>
> Finally, can you tell me if you paid the other condo owners 100% of their claim, based on a pro rata basis, etc?

On January 17, 2019, Dana Evans sent Ver Helst the following email:

> I do not believe that the Great American Insurance Co. of New York has the right to a claim against my policy.
>
> The Texas Property Code Sec. 82.111 requires condominium associations to maintain an insurance policy covering the building, common elements and the units, except for improvements and betterments in the individual units. The Code also requires that each unit owner must be insured by the policy against liability arising out of the person's ownership of the common elements or membership in the association as required by the association declarations (subsection (d)(1)). This would appear to limit any liability that I would have

---

use The Shore Condominium Association when referring to the entity in charge of the condominium based on the documents in the Clerk's Record that show that was the entity's legal name of record when the fire occurred in May 2019.

6

relating to damages to common elements of the building. In addition, the Association insurance policy must waive the right to subrogation against a unit owner (subsection (d)(2)). Finally, if the unit owner has insurance covering the same loss, the association insurance is primary (subsection (d)(4)). If a unit owner is partly or wholly responsible for a loss, the association may assess the owner for the amount of the association insurance policy deductible and any costs exceeding the insurance limits (section (l)). This recovery is not available to the insurance company.

The Shore Condominium Declarations Section VI, subsection 6.1.c. requires that insurance purchased by the Association or an Owner must waive the right to subrogation against any member or owner of the association.

The Great American Insurance Co. of New York insurance policy for The Shore Condominium Association complies with the requirements of the Texas Property Code. It provides coverage for the building except for improvements and betterments and appliances installed in individual units (Building and Personal Property Coverage Form page 36, and Texas Condominium Association Coverage Amendment page 100). Under the Texas Condominium Association Coverage Amendment, the policy specifically waives the right to recover against any unit owner (page 101). The deductible for any loss is $25,000 (page 109). This amount would be recoverable by The Shore Condominium Association, through their trustee, and not by Great American Insurance Co. of New York.
Based on this information, I do not see how Great American Insurance Company of New York can make a claim against me for any losses that they insure under the Association policy. My liability for the deductible amount should be paid to the Association Trustee. I am responsible for damage to property of other owners not

covered under the Association policy, and I expect that to be covered under liability section of my policy with Nationwide Mutual.

Please explain to me how I have this wrong.[7]

After Northwestern received Dana's email, it didn't fund the settlement or send Great American any releases. In February 2020, Great American sued Nationwide alleging that Nationwide accepted and then breached the agreement it made with Great American to settle Great American's subrogation claim. Nationwide answered and filed a counterclaim. In its counterclaim, Nationwide alleged that assuming an agreement to settle did occur, which it denied, the agreement was illegal and unenforceable as a matter of public policy under the Uniform Condominium Act. In the alternative, Nationwide claimed the settlement resulted from a mutual mistake. It asked the court based on its claims of mistake to set the settlement aside.

The parties sought to resolve the claims and defenses raised in their pleadings in a series of six dispositive motions: (1) Great American's

---

[7]Dana Evans learned in a telephone call with Ver Helst on January 16 that Great American had threatened to sue the Evanses if Northwestern refused to pay the amount Great American demanded to settle the subrogation claim that it represented to Ver Helst it had against the Evanses.

8

Traditional Motion for Summary Judgment (Nationwide's Breach of Contract Claim); (2) Great American's Traditional Motion for Partial Summary Judgment (Nationwide's Counterclaim for Declaratory Judgment and Motion to Dismiss for Lack of Subject Matter Jurisdiction); (3) Nationwide's Traditional Motion for Summary Judgment (Great American's Breach of Contract Claim); (4) Nationwide's Traditional Motion for Summary Judgment (Great American's Claims for Declaratory Relief); (5) Great American's Amended Traditional Motion for Partial Summary Judgment (Nationwide's Breach of Contract Claim); and (6) Great American's Plea to the Jurisdiction and Motion to Dismiss. In October 2020, the trial court ruled on these motions, incorporating its rulings in a Final Judgment.

Great American complains the trial court erred in granting Nationwide's Traditional Motion for Summary Judgment on its breach of contract claim. Based on that ruling, the trial court ordered Great American to "take nothing on its claims and causes of action against Defendant Nationwide[.]" The trial court made its take-nothing judgment final by including language of finality in its judgment. The last two

9

sentences of the judgment state: "All relief not granted is denied. This Judgment is final as to all claims and parties and is appealable."[8]

After the trial court signed the judgment, Great American moved for a new trial. The trial court later overruled the motion and Great American appealed.

## Standard of Review

We review summary judgments de novo.[9] "To prevail on a traditional motion for summary judgment, the movant must show no material fact issues exist and that it is entitled to judgment as a matter of law."[10] We take as true all evidence favorable to the respondent, and we indulge every reasonable inference and resolve any doubts in favor of the non-movant.[11] "When both parties move for summary judgment and the trial court grants one motion and denies the other, . . . we review both

---

[8]*See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) ("A trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable.").

[9]*Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022).

[10]*Id.*; Tex. R. Civ. P. 166a(c).

[11]*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

sides' summary judgment evidence and render the judgment the trial court should have rendered."[12]

In its motion for summary judgment, Northwestern relied on more than one theory to support its claim that it was entitled to summary judgment. When the trial court ruled on Northwestern's motion, it did not explain the theory on which it decided to grant Northwestern's motion. Since the court did not specify the grounds on which it granted the motion, we must affirm the trial court's "summary judgment if any of the grounds asserted are meritorious."[13]

## Analysis

Great American raises three issues in its brief. In issue one, Great American argues that its settlement with Northwestern doesn't violate public policy under the Uniform Condominium Act because the legislature didn't intend to prevent parties from settling disputes under Chapter 82. In issue two, Great American argues the trial court erred in granting Northwestern's motion because the evidence conclusively

---

[12]*Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 147-48 (Tex. 2020).

[13]*Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

proved the parties agreed to settle and their agreement is enforceable under Texas law. In issue three, Great American argues the trial court erred in granting the motion based on Northwestern's argument that Great American failed to comply with a condition precedent to Northwestern's policy before Great American filed suit.

We note that both parties have cited the Uniform Condominium Act throughout their briefs.[14] For convenience, we will address Great American's argument that the settlement doesn't violate public policy first. And when addressing this argument, which Great American relied on in the first two issues of its brief, we will assume without deciding that the representatives of Northwestern and Great American had full knowledge of all the facts needed to reach a binding agreement when they exchanged the emails that resulted in the settlement that led to the dispute.[15] With these assumptions, we are left with two questions of law:

---

[14]Tex. Prop. Code Ann. §§ 82.001-.164 (West 2014 & Supp. 2022) (the Uniform Condominium Act or the UCA). Although the legislature has amended various sections of the UCA after the May 2019 fire, there are no changes in the statute relevant to Great American's appeal. For that reason, we cite the current version of the statute in the opinion.

[15]Northwestern disputes that Ver Helst had full knowledge of all the relevant facts. But his knowledge is not relevant if the Uniform Condominium Act prevents the courts from enforcing the agreement even

(1) Does the Uniform Condominium Act apply to a condominium owners association's insurance company? (2) If so, did the Texas legislature intend to prevent parties from using settlement agreements under circumstances that involve the insurance the Uniform Condominium Act requires condominiums to carry as a device to avoid the limitations and prohibitions in Property Code section 82.111?[16]

*Does the Uniform Condominium Act*
*Apply to Great American?*

Just like any other individual or entity, insurance companies are free to settle doubtful and disputed claims and "may contract as they wish so long as the agreement reached does not violate positive law or offend public policy."[17] Still, the "freedom of contract is not unbounded."[18] "When a contractual arrangement is inconsonant with public policy expressed in a regulatory statute, preservation of contractual freedom and its 'indispensable partner'—contract enforcement—must yield."[19]

---

when the parties know all the relevant facts needed to allow parties to reach a binding settlement.

[16]*Id.* § 81.111 (Insurance).

[17]*Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 475 (Tex. 2016).

[18]*Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008).

[19]*White,* 490 S.W.3d at 490.

13

Great American argues that nothing in the Act prohibited Great American "from making a subrogation claim against Nationwide" or Northwestern from "accepting Great American's" demand. Great American also claims the Uniform Condominium Act doesn't apply to insurers who sell insurance to condominium associations, suggesting its reach is limited to condominium owners' associations and to the owners of the units in condominiums. As Great American sees it, its settlement with Northwestern "conferred a new, independent right to Great American upon which Great American could recover without aid, or assistance of the allegedly illegal policy or right/claim, especially considering the fact that the settlement included the Association's deductible." In response to Northwestern's argument claiming Great American waived its rights of subrogation under Chapter 82 and its policy, Great American suggests that Northwestern should have raised that claim in response to Great American's settlement demand. Great American concludes Northwestern lost its right to raise that claim after agreeing to the settlement.

Starting with the Act, we note the Act regulates how condominiums created since January 1, 1994, are regulated and managed.[20] Given the inherent complexities involved in carving real estate up into separately and commonly owned parts, the UCA establishes baseline rules that apply the creation, development, and management of condominiums.[21] The insurance coverage condominiums must carry is just one of the areas where the legislature became involved in the business of regulating and managing condominiums under the Act.[22] And when a condominium includes units with horizontal boundaries described in the declaration filed of record, the legislature said the condominium owner's association must obtain a policy, if reasonably available, that includes the property in an owner's unit, except for the "improvements and betterments" that the unit owner installed.[23]

---

[20]Tex. Prop. Code Ann. §§ 82.001, .051, .055, .101-.116.
[21]*Id.* §§ 82.001-.164.
[22]*Id.* § 82.111(d).
[23]*Id.* § 82.111(b). The Declaration for The Shore states the physical boundaries of the units are "depicted on the "Map[.]" The Declaration defines "Map" as "the plats and plans described as Exhibit 'B' attached to the Declarations." However, the Clerk's Record does not contain the plats and plans exhibit that the documents filed of record in Travis County reference as an attachment to the Declaration, Exhibit B. Still, the definition of "Map" in The Shore's Declaration states Exhibit B incudes a

In addition to the above, the Uniform Condominium Act contains additional requirements obligating the Association to obtain insurance coverage for the property of The Shore. Under Property Code section 82.111(d), the Association had to obtain a policy (1) naming each unit owner as an insured, (2) waiving the carrier's right to subrogation against each unit owner, (3) providing that no act or omission of a unit owner—unless acting within the unit owner's authority for the Association—would void the Association's policy, and (4) making the Association's policy the primary policy should a unit owner obtain insurance that also covered their loss.[24]

No one has argued that a policy meeting the requirements of Property Code section 82.111 wasn't reasonably available when the Association bought the policy insuring The Shore against the losses that were caused by the May 2019 fire. Indeed, the evidence shows Great American treated the individual unit owners, including the Evanses, as insureds under its policy as it paid claims as they were presented by unit

---

"survey plat of the Property and dimensional drawings that horizontally and vertically identity and describe the Units and the Common Elements."

[24]*Id.* § 82.111(d).

owners for the property covered by the policy in the units damaged by the fire.

While Great American argues the legislature didn't intend Chapter 82 to apply to insurance companies, the language of the statute shows its argument lacks merit. For instance, Property Code section 82.111(g) provides that "[t]he insurer issuing the policy may not cancel or refuse to renew it less than 30 days after written notice of the proposed cancellation or nonrenewal has been mailed to the association."[25] And when a claim is submitted that is payable for damages to the Common Elements of the condominium under a policy purchased by the Association, "[t]he insurance proceeds for that loss shall be payable to an insurance trustee designated by the association for that purpose[.]"[26] All in all, Property Code section 82.111 represents a tightly regulated scheme that designates the insurance condominiums built after January 1, 1994, must carry.[27]

Thus, it's clear from the language in the statute that the legislature intended section 82.111 to apply to insurers that sell condominium

---

[25]*Id.* § 82.111(g).
[26]*Id.* § 82.111(e).
[27]*Id.* §§ 82.111, .111(d).

policies to condominium associations subject to Chapter 82.[28] When a "statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids."[29] We reject Great American's argument that Chapter 82 doesn't apply to Great American. The summary-judgment evidence shows Great American sold an insurance policy to a condominium owner's association that is required to carry a policy that contains the coverage required by Property Code section 82.111(d).[30] Great American concedes its coverage did comply with the Act, and based on our review of the policy, we agree the provisions in the policy include a waiver of subrogation against those who own units in The Shore.[31]

*Does Chapter 82 Render the Settlement Unenforceable?*

Great American argues Chapter 82 doesn't reach its agreement. But the language of Chapter 82 prohibits parties from using any device

---

[28]*Id*. § 82.111.
[29]*State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).
[30]Tex. Prop. Code Ann. § 82.111(d).
[31]*See* Great American Policy Endorsement SB 87 66 Texas — Condominium Association Coverage Amendments, IV. Select Business Policy Conditions, Loss Conditions[—Amendments, Waiver of Rights of Recovery]; Condominium Declaration For The Shore, A Condominium, Article VI, Insurance, Section 6.1(c).

except as expressly provided  by Chapter 82 from evading the Chapter's limitations or prohibitions.[32]  The section of the Property Code restricting the freedom of parties to freely contract around the provisions in Chapter 82 states:

> Except as expressly provided by this chapter, provisions of this chapter may not be varied by agreement, and rights conferred by this chapter may not be waived. A person may not act under a power of attorney or use any other device to evade the limitations or prohibitions of this chapter or the declaration [filed of record for the condominium].[33]

To be sure, the legislature used "except as provided" in  many of the sections of Chapter 82.[34] But we find it significant that it didn't provide for any exceptions in Property Code section 82.111(a)-(d), the subsections of Chapter 82 that create the rules prescribing the insurance coverage for condominium owners associations like the one responsible for managing The Shore.[35]

To be sure, section 82.004 applies to *persons* and that term isn't defined in the Uniform Condominium Act.[36] Still, we must assume that

---

[32] *Id*. § 82.004.
[33] *Id*.
[34] *Id*. §§ 82.102(f), .103(a), .107(a)-(d),  .170, .111(i), .112(d), .113(d), .114(j), .117, .151(a), .152(a), .157(a), .007(b),  .067(a), .068(f).
[35] *Id*. § 82.111(a)-(d).
[36] *See id*. § 82.003 (Definitions).

the legislature intended for courts to interpret the word person to include corporations since the legislature defined *person* to include corporations in the Code Construction Act, an Act that applies to defining the words the legislature didn't specifically define in the Uniform Condominium Act.[37] A careful examination of the Act's structure reveals that if insurance coverage is reasonably available to a condominium required to cover the risks listed in section 82.111(a)-(d), the condominium owners association and its insurer cannot waive the requirements. No one has claimed that insurance covering those risks was not reasonably available to The Shore. Thus, as a *person* subject to restrictions and prohibitions of section 82.111 and 82.004, Great American could not use any "device to evade the limitations or prohibitions" of the waiver of subrogation required in section 82.111(d).[38]

Faced with the language of the statute, Great American still argues that enforcing its arm's-length agreement with Northwestern outweighs Northwestern's public policy argument that its settlement should be declared void as a matter of public policy despite the policy preference

[37]Tex. Gov't Code Ann. §§ 311.002, 311.005(2) ("'Person' includes corporation, organization, . . . and any other legal entity.").
[38]Tex. Prop. Code Ann. §§ 82.004, .111, .111(d).

the legislature expressed prohibiting parties from using any device to evade the limitations of Chapter 82. According to Great American, enforcing settlements and allowing parties to settle claims is more important than allowing it to use the settlement in the manner they used it here. Northwestern responds that enforcing the settlement offends public policy because enforcing the agreement would allow Great American to collect on a subrogation claim that both doesn't exist under its policy and to collect on a subrogation claim the legislature required it to waive.[39]

Great American cites several cases to support its argument that the trial court erred in holding its settlement with Northwestern was unenforceable. The cases it cites, however, may be distinguished on their facts. For example, Great American relies heavily on *Jistel v. Tiffany Trail Owners Association, Incorporated*, 215 S.W.3d 474, 482 (Tex. App.—Eastland 2006, no pet.) to support its claim that Nationwide can't rely on section 82.004 to avoid the terms of its agreement to fund the settlement based on the $266,540 term on which the parties agreed.[40]

---

[39]*See* n.31.
[40]*Jistel v. Tiffany Trail Owners Ass'n, Inc.*, 215 S.W.3d 474, 477-78 (Tex. App.—Eastland 2006, no pet.).

21

But unlike here, the parties involved in the lawsuit in *Jistel* were the unit owner and the condominium association. The question before the Eastland Court of Appeals was whether Chapter 82 allowed the parties to settle a claim Larry Jistel, as the plaintiff, filed after suing Tiffany Trail to repair his unit on a claim against Tiffany Trail Condominium Association under Property Code section 82.107.[41] Under section 82.107, a condominium owner's association is "responsible for maintenance, repair, and replacement of the common elements" of the condominium.[42] In section 82.107, the legislature provided room for a condominium association to alter the maintenance, repair, and replacement requirements. But in section 82.111, the provision that mandates the insurance coverage condominiums must carry, the legislature did not provide room allowing condominiums to alter the insurance coverage the legislature required.[43]

To boil it down, the Eastland Court of Appeals didn't address a settlement based on a claim waived under section 82.111, a section where the legislature didn't allow variances from the insurance coverage the

---

[41]Tex. Prop. Code Ann. § 82.107(a).
[42]*Jistel*, 215 S.W.3d at 482; Tex. Prop. Code Ann. § 82.107(a).
[43]*Compare* Tex. Prop. Code Ann. § 82.107(a)-(d), *with* § 82.111.

legislature required condominiums to have.[44] And unlike section 82.107, which applies to the maintenance and repair obligations of condominium associations, section 82.111, which governs a condominium association's insurance obligations, doesn't allow the association or its insurer the right to vary or waive the rights conferred on unit owners in section 82.111 including the waiver of subrogation provision, section 82.111(d)(2).[45]

The other cases Great American relies on in its brief are also distinguishable. None of them involve statutory provisions like the ones in Property Code sections 82.004 and 82.111.[46]

---

[44]*Jistel*, 215 S.W.3d at 482-83; *Compare* Tex. Prop. Code Ann. § 82.107, *with id.* § 82.111.

[45]*Compare* Tex. Prop. Code Ann. § 82.107, *with id.* §§ 82.111, .111(d)(2).

[46](1) *Hartford Fire Ins. Co. v. Galveston, H. & S.A. Ry. Co.*, 239 S.W. 919, 923 (Tex. Comm'n App. 1922, holding approved, judgm't adopted); (2) *Am. Nat'l Ins. Co. v. Tabor*, 230 S.W. 397, 399 (1921); (3) *De Leon v. Trevino & Bros.*, 49 Tex. 88, 91-92 (1878); (4) *Plano Parkway Office Condos. v. Bever Props., LLC*, 246 S.W.3d 188, 195 (Tex. App.—Dallas 2007, pet. denied) (op. on reh'g); (5) *Beyers v. Roberts*, 199 S.W.3d 354, 358 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); (6) *Associated Milk Producers v. Nelson*, 624 S.W.2d 920 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); (7) *Markman v. Gaitz*, 499 S.W.2d 692, 696 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); (8) *Castilleja v. Camero*, 402 S.W.2d 265, 269 (Tex. App.—Corpus Christi 1966), *aff'd*, 414 S.W.2d 424 (Tex. 1967); (9) *City of Garland v. Tex. Power & Light*

Since the text in section 82.004 and 82.111 is clear, it "is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result."[47] The text of the statute required Great American to waive its subrogation rights, which left it with no right to sue the Evanses in an effort to shift the losses that fell on its policy to the Evanses and their insurer, Northwestern. For that reason, voiding Great American's settlement with Northwestern doesn't strike us as absurd or unfair.

## Conclusion

We hold the trial court did not err in granting Northwestern's motion for summary judgment. The summary-judgment evidence conclusively established that Great American waived its subrogation claim against the Evanses,[48] and that under an endorsement to Great American's policy, Great American's policy is the primary policy that was

---

*Co.*, 295 S.W.2d 925, 930 (Tex. Civ. App.—Dallas 1956, no writ); (10) *Fred Miller Brewing Co. v. Coonrod*, 230 S.W. 1099 (Tex. Civ. App.—San Antonio 1921, writ ref'd).

[47] *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 498, 492 (Tex. 2018).

[48] *See* n.31.

required to respond to the damages that resulted from the fire at The Shore.[49] We overrule Great American's first two issues.[50] The trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 12, 2022
Opinion Delivered February 9, 2023

Before Golemon, C.J., Horton and Johnson, JJ.

---

[49]*See* Great American Policy Endorsement SB 87 66 Texas — Condominium Association Coverage Amendments, IV. Select Business Policy Conditions, Loss Conditions (making Great American's policy primary when a unit owner has other insurance that covers the loss); Condominium Declaration For The Shore, A Condominium, Article VI, Insurance, Section 6.2(a)(iii); *see also* Tex. Prop. Code Ann. § 82.111(d)(4).

[50]We need not reach Great American's third issue since we have affirmed the summary judgment on Northwestern's claim the settlement is unenforceable against it under Chapter 82. *See* Tex. R. App. P. 47.1.